EQUAL RIGHTS CENTER,
et al., Plaintiffs

v.

ARCHSTONE SMITH TRUST, et al.,
Defendant/Cross–Plaintiffs

v.

Niles Bolton Assos., Inc.,
Defendant/Cross–
Defendant.

Civil Action No. AMD 04–3975.

United States District Court,
D. Maryland.

March 18, 2009.

815

Joseph M. Sellers, Matthew Keith Handley, Cohen Milstein Sellers and Toll PLLC, Donald Lee Kahl, Isabelle Marie Thabault, Washington Lawyers Comm. for Civil Rights and Urban Affairs, Washington, DC, for Plaintiffs.

Gary A. Winters, Andrew A. Nicely, Richard Ben Veniste, Richard P. Caldarone, Lucius T. Outlaw, III, Mayer Brown LLP, Terrence Michael McShane, Lee and McShane PC, Lynn Estes Calkins, Holland and Knight LLP, Washington, DC, Richard O. Wolf, Robert Milton Moore, Moore and Lee LLP, McLean, VA, Howard Spessard Stevens, Wright Constable and Skeen LLP, Baltimore, MD, for Defendants.

Charles E. Rogers, Smith Currie and Hancock LLP, Cheryl H. Shaw, Kent T. Stair, Carlock Copeland Semler and Stair LLP, Atlanta, GA, Nicholas S. McConnell, Russell S. Drazin, Jackson and Campbell PC, Washington, DC, William D. Gillis, Jr., Donovan Hatem LLP, for Defendant/Cross–Defendant.

## MEMORANDUM OPINION

ANDRE M. DAVIS, District Judge.

Plaintiffs (The Equal Rights Center ("ERC")), the American Association of

People with Disabilities, and the United Spinal Association filed this action against Defendants Archstone Smith Trust and Archstone Operating Trust (together "Archstone"), Niles Bolton Associates, Inc. ("Niles Bolton"), Clark Realty Builders, VIKA, Inc., and Meeks + Partners (collectively "Defendants"), for violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619, and the Americans with Disabilities Act, 42 U.S.C. § 12181 ("ADA"). Plaintiffs alleged that more than 100 Archstone multi-family properties around the nation were non-compliant with those federal statutes insofar as the properties were designed, constructed, and maintained in a manner that failed to render them fully accessible to disabled and handicapped persons. Niles Bolton provided architectural services for 15 of these properties.

On June 9, 2005, this court issued a Consent Decree detailing a settlement agreement reached by Archstone with Plaintiffs. Plaintiffs eventually reached settlement agreements with all Defendants, including Niles Bolton, and additional Consent Decrees were approved and entered by the court.

The serial settlement agreements and resulting Consent Decrees have disposed of all claims and cross-claims save Archstone's state-law cross-claim against Niles Bolton. Discovery as to the cross-claim has concluded and now before the court are the following motions: (1) Archstone's motion to amend its cross claim; (2) the parties' cross-motions for summary judgment; and (3) Niles Bolton's motion to exclude Archstone's expert opinion testimony. All the motions have been fully briefed and a hearing was held on February 12, 2009. For the reasons set forth within, I shall deny the belated motion to amend the cross-claim. Furthermore, consonant with emergent legal principles, I am persuaded that Archstone's cross-claim for indemnity conflicts with federal law and must be dismissed with prejudice.

## I.

Plaintiffs are nonprofit membership organizations that further the interests of persons with disabilities. On December 20, 2004, they filed suit against Defendants alleging violations of the FHA and the ADA. Collectively, Defendants design, develop, construct, and operate apartment complexes throughout the country. The apartment complexes at issue are located in Maryland, Arizona, California, Colorado, Florida, Georgia, Illinois, Massachusetts, New Mexico, North Carolina, New Jersey, New York, Oregon, Tennessee, Texas, Virginia, Washington, and the District of Columbia. The remaining parties are Archstone, a real estate developer, and Niles Bolton, one of the architectural services design firms with which Archstone's predecessors contracted.

As mentioned above, in June 2005, Archstone and Plaintiffs entered into a settlement agreement, which was incorporated into a Consent Decree. The Consent Decree provided, *inter alia*, that Archstone would (1) pay to Plaintiffs $1.4 million in damages, attorney's fees, costs and other expenses and (2) survey and retrofit a total of 71 properties to bring them into compliance with the requirements of the FHA and the ADA. Fifteen of the 71 properties described in the Consent Decree were designed for Archstone's predecessor by Niles Bolton.

On July 1, 2005, Archstone filed a cross-claim for indemnity against Niles Bolton seeking to recover (1) the portion of the $1.4 million settlement payment to Plaintiffs attributable to Niles Bolton's designs; (2) the costs of retrofitting the Niles Bolton-designed properties encompassed by

the Consent Decree; and (3) a portion of the attorney's fees Archstone has incurred in defending against Plaintiffs' claims and in seeking relief from Niles Bolton. Archstone's cross-claim relates to the following 15 properties: Governor's Green in Maryland; Reston Landing, Springfield Station, Stoneridge, Woodland Park, and Worldgate in Virginia; Archstone Matthews, Olde Apex (a/k/a Cameron Woods) and Archstone Preston (a/k/a Cameron Chase) in North Carolina; Barrett Creek, Cameron Landing, State Bridge, and North Point in Georgia; Rocky Creek in Florida; and Hickory Hollow in Tennessee.

Archstone's cross-claim against Niles Bolton relies on the following legal theories, each set forth in a separate count: (1) contractual indemnity; (2) implied indemnity; (3) breach of contract; and (4) professional negligence. Each of these theories rests on the law of one of the following states: (1) the state in which a particular contract was formed; (2) the state selected by a contractual choice-of-law provision; (3) the state where the property is located; and/or (4) Georgia, where Niles Bolton is headquartered. Archstone elaborates that it is "seeking damages only for those violations [of the FHA] that occurred because NBA specified an incorrect dimension or other detail in its construction documents, or otherwise failed to provide sufficient information for the builder to construct the project in accordance with the applicable accessibility requirements." *See* Archstone's Mem. in Supp. of Mot. Summ. J. at 5 (brackets added).

In October 2008, after more than three years of litigation, Archstone moved to amend its cross-claim, *inter alia*, to assert a claim for contribution. Archstone also moved for summary judgment on the issue of Niles Bolton's liability for failure to design FHA-compliant housing, arguing that only damages issues should require trial.

Niles Bolton has filed a cross-motion for summary judgment on all counts. Niles Bolton principally argues that, as a matter of settled principles of federal law, Archstone cannot seek, under state law, indemnification (or contribution), regardless of the state law legal theory employed. In the alternative, Niles Bolton argues that the state law claims are (1) barred by limitations; (2) barred because Archstone's settlement with Plaintiffs was an unreasonable but voluntary assumption of liability which it could have and would have avoided by defending itself in this action; (3) fatally undermined because, *inter alia*, Archstone has failed to project expert opinion evidence sufficient to sustain its burden to establish the applicable standard of care and any breach of professional duty. Finally, Niles Bolton argues that as a matter of law, it must prevail on the merits of the cross-claim. (Niles Bolton has filed a separate motion seeking to exclude Archstone's expert opinion testimony.)

In the view I take of the case, I need only reach the first issue presented by Niles Bolton's motion for summary judgment, preemption.

## II.

Under Fed.R.Civ.P. 15(a)(2), "[t]he court should freely give leave [to amend pleadings] when justice so requires." The express language of the Rule reflects a tension between two important goals: (1) allowing easy amendment to reflect the changes in a party's position as the case develops, and (2) preventing prejudice to an opposing party who will have difficulty in determining how to present its case if a party is allowed to continuously change its position. The Fourth Circuit has construed Rule 15 liberally. *See, e.g., Harless v. CSX Hotels, Inc.,* 389 F.3d 444, 447 (4th Cir.2004) ("The language of Federal Rule

of Civil Procedure 15(a) has been construed to counsel a liberal reading of its application."). According to the Fourth Circuit, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986) (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Here, Niles Bolton opposes Archstone's motion for leave to amend its cross-claim. Niles Bolton argues that allowing Archstone to amend the cross-claim to include a claim for contribution will be (1) prejudicial, as Niles Bolton would have to conduct further discovery; and (2) futile, because federal law precludes a right to contribution under the FHA and the ADA. I will consider these issues in turn.

*Prejudice*

▪ Whether an amendment would be prejudicial is a factual determination. *Laber v. Harvey,* 438 F.3d 404, 427 (4th Cir.2006). Courts look at the nature of the proposed amendment, the purpose of the amendment, and the time when the amendment was filed. *Id.* For example, a prejudicial amendment "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and is] offered shortly before or during trial." *Johnson,* 785 F.2d at 509 (*citing Roberts v. Arizona Board of Regents,* 661 F.2d 796, 798 (9th Cir.1981); *Lyons v. Board of Ed. of Charleston,* 523 F.2d 340, 348 (8th Cir. 1975); *Head v. Timken Roller Bearing Co.,* 486 F.2d 870, 873 (6th Cir.1973)). Courts disfavor belated claims that change the character of litigation. *Deasy v. Hill,* 833 F.2d 38, 42 (4th Cir.1987) (affirming the denial of leave to amend a complaint on the eve of trial to include a claim for negligent performance of a pap smear

where the original complaint in a suit for medical malpractice alleged, in part, a negligent failure to disclose the results of the pap smear). On the other hand, an amendment that simply adds an additional theory of recovery based on the same set of alleged facts offered before discovery has begun is not prejudicial. *Laber,* 438 F.3d at 427.

▪ Niles Bolton argues that if Archstone's motion were granted, it would be prejudiced because litigating a claim of contribution would require additional discovery. The court is constrained to endorse this contention. Niles Bolton correctly infers from the proposed claim for contribution that Archstone is essentially admitting liability for some of the violations at the Niles Bolton-designed properties Archstone developed and operates. This admission, according to Niles Bolton, would require further discovery into the nature of each and every alleged violation (under myriad states' laws) to which Archstone is impliedly conceding liability.

In other words, as the case had been framed in the more than three years before the motion to amend was filed, Niles Bolton was alleged, by virtue of the claim for indemnification, to be *solely liable* under the FHA and the ADA for *all* of the violations in the complexes it designed. *See Baker, Watts & Co. v. Miles & Stockbridge,* 876 F.2d 1101, 1103 (4th Cir.1989) (en banc) ("Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer pay his proportionate—or *pro rata*—share of the adverse judgment.").

To permit an eleventh hour change in litigation theory to one of *partial liability* would mean that Niles Bolton has been prejudiced in its ability to assess rationally its exposure to a damages award in favor of Archstone, as its litigation plan did not

contemplate such an atomistic battlefield. Furthermore, Niles Bolton's settlement posture would of necessity have been quite different three years ago (before the expenditure of large sums for attorney's fees and litigation expenses) had it known that it was not facing a liability in excess of 15/71 of $1.5 million plus some share of the cost of retrofitting, but something considerably below that amount. (The numerator of the fraction is the total of Niles Bolton-designed properties and the denominator is the total number of properties requiring modifications identified in the Consent Decree stipulated by Plaintiffs and Archstone.)

Unquestionably, any reasonable litigant in Niles Bolton's position would have sought specific discovery into how Archstone believed it appropriate to allocate fault for the violations alleged by Plaintiffs, e.g., was Niles Bolton 25% at fault; 35%; 75%? Plainly, in the face of a claim solely for indemnification, no litigant would have been motivated to undertake such discovery, and Niles Bolton has not done so.

Indeed, Niles Bolton attempted in some ways to obtain certain discovery that, indisputably, would have been relevant to a contribution claim but not to an indemnity claim. Archstone resisted such discovery and both Magistrate Judge Gesner (who managed discovery) and I sustained Archstone's objections, each of us on the understanding that Archstone was pursuing *indemnity*. As Judge Gesner reasoned, in part, in granting a protective order to Archstone:

First, several of the "issues" raised by [Niles Bolton] as to why the settlement documents are relevant relate to how Archstone is allocating the $1.4 million settlement it paid to plaintiffs across the 71 properties subject to the settlement. Archstone responds that it is merely allocating 21% of that sum to [Niles Bolton] because [Niles Bolton] designed 15 of the 71 properties, (i.e., 21% of the total), and that [Archstone and Plaintiffs] did not agree on a damage figure for any particular property or for any particular type of violation.... Based upon this representation, the court cannot envision how the settlement documents will yield admissible evidence.

*See* Feb. 8, 2008, Order Granting Motion for Protective Order, p. 5 (Docket No. 145); *see also* this court's Order overruling Niles Bolton's objections to Judge Gesner's grant of the protective order:

Niles [Bolton]'s emphasis that because Archstone's claim is one for *indemnity* arising out of a *settlement agreement* with plaintiffs the "reasonableness" of the settlement has primacy here is misguided, as Judge Gesner clearly recognized. Niles [Bolton] is not an insurer; the claim for indemnity under the circumstances here is much more akin to an original action for professional malfeasance. Manifestly, to succeed on its indemnity claim, Archstone will have to show the elements of such a claim; the details of settlement negotiations between the settling parties are of no consequence to the remaining, genuine issues in this case. Niles [Bolton's] keen interest in, indeed, its seeming obsession with, the settlement process, while understandable, perhaps, is quite beside the point.

June 12, 2008, Order Overruling Objections to Order of Magistrate Judge, pp. 1–2 (Docket No. 160). As can be seen, there is no suggestion in these rulings that the court perceived there to be a contribution claim presented by Archstone.

Although no trial date had been assigned when the motion to amend was filed in October 2008, the close of the three-year discovery period was at hand and the due date for dispositive motions was looming

large. While delay alone will not justify denial of a motion to amend, "[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule." *Deasy*, 833 F.2d at 41 (internal quotation omitted).

Archstone argues that Niles Bolton's contention that it will be prejudiced by the amendment should be rejected because Niles Bolton had adequate notice of Archstone's intent to assert a claim for contribution. As support for this assertion, Archstone relies solely on the following allegation in Count IV (labeled "Negligence") of its cross-claim: "Niles Bolton is liable to Archstone for contribution of a portion of (i) the damages, attorney's fees and costs paid by Archstone to the Plaintiffs, and (ii) costs incurred by Archstone to modify and retrofit noncompliant portions of the Properties designed by Niles Bolton." Cross-claim, ¶ 29. I reject Archstone's contention that this lone statement in its cross-claim was sufficient to give reasonable notice to Niles Bolton of the existence of a claim for contribution.

First, the allegation is ambiguous. In claiming "contribution for a portion," Archstone has not adequately advised Niles Bolton that the damages it seeks in the negligence count is any different from that sought in the other counts. (After all, the essence of the negligence claim is that Niles Bolton is guilty of *negligent breach of contract.*)

Moreover, in its prayer for relief, Archstone specifically failed to seek contribution, alleging, instead, that it sought "[j]udgment in favor of Archstone and against Niles Bolton for the cost of modifying those portions of the Properties designed by Niles Bolton;" and judgment "for the portion of the $1.4 million settlement paid by Archstone to Plaintiffs on account of the design deficiencies in the Properties designed by Niles Bolton;" and finally and most pointedly, "[a] declaration

that Niles Bolton is required to indemnify Archstone for all costs that have been incurred or will be incurred by Archstone, in accordance with the Decree, to modify those portions of the Properties designed by Niles Bolton." In short, the cross-claim did not provide reasonable notice to Niles Bolton that not only indemnification, but also contribution, was being sought. *See id.* (disapproving of a party's "[h]inting at a claim"). Clearly, Archstone's decision to file the motion for leave to amend arose exactly because it realized, late in the litigation day, that it had not asserted a claim for contribution.

Accordingly, I find that the proposed amended cross-claim would work real and substantial prejudice to Niles Bolton. In light of the well-settled law surrounding the obvious differences between indemnity, on the one hand, and contribution, on the other hand, *see Baker, Watts & Co.,* 876 F.2d at 1103; *and see* cases discussed *infra,* Archstone's failure to identify a claim for contribution for more than three years of vigorous litigation and contentious discovery is not excusable. The delay, coupled with the evident prejudice the proposed amendment would visit on Niles Bolton, compels denial of the motion to amend.

*Futility*

Niles Bolton also contends that the belated addition of a contribution claim would be futile because federal law forecloses a claim for contribution in respect to joint and several liability arising under the FHA and the ADA, with the same force as it precludes a claim for indemnity. As discussed below, I agree that no right to indemnification exists under the FHA or the ADA, and there is no reason to suppose an analysis of a claim for contribution under the circumstances here would yield any different result.

For the reasons explained above, therefore, the motion to amend shall be granted, insofar as Archstone seeks to delete two of the properties it originally identified as Niles Bolton-designed properties, but it shall be denied insofar as Archstone seeks to assert a claim based on the theory of contribution.

### III.

Cross motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.1983), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). The court may grant summary judgment in favor of one party or deny both motions. *See Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine if, considering all evidence, no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it may affect the outcome of the case. *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this initial burden, the non-moving party must set out specific facts showing a genuine issue for trial to avoid summary judgment. Fed.R.Civ.P. 56(e)(2).

### IV.

#### A

Plaintiffs brought first-party claims against Defendants under the FHA and the ADA. Archstone's subsequent cross-claim against Niles Bolton is a derivative claim for indemnity. *See Hepburn v. Athelas Inst., Inc.*, 324 F.Supp.2d 752, 757 n. 1 (D.Md.2004) (indemnification and contribution are derivative claims). Thus, it is undisputed that, although Archstone has clothed its claims for relief in the state law garb of breach of contract and professional malpractice, all are derivative claims in the sense that they arise *solely* based on Archstone's actual or potential first-party liability under, i.e., its violation of, the FHA and/or the ADA.

It is well-settled, as a matter of federal jurisprudence, that a right of indemnity and/or contribution may be created (1) by Congress, either explicitly or by judicial implication from discovered Congressional intent, or (2) by the Supreme Court in the exercise of its remedial power to fashion a limited federal common law. *Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL–CIO*, 451 U.S. 77, 90, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (holding that contribution claims were not available to an employer liable, jointly with a labor union, for violations of Title VII of the Civil Rights Act of 1964 and/or the Age Discrimination in Employment Act of 1967). The clear weight of authority among lower courts applying the reasoning

of *Northwest Airlines* compels the conclusion that there is no right to indemnification under the FHA or the ADA.

■■■ First, no such expressed right exists under those statutes. As for the possibility of an implied right based on one or both of the statutes, the Supreme Court has instructed: "In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction.... The ultimate question in [such] cases ... is whether Congress intended to create the private remedy—for example, a right to contribution—that the plaintiff seeks to invoke." *Id.* at 91, 101 S.Ct. 1571. Congressional intent may be inferred from the following factors: the language of the statute itself, the statute's legislative history, the purpose and structure of the statute, and the likelihood that Congress intended to supersede or to supplement existing state remedies. *Id.* (*citing Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).

■■■ Second, although, in limited circumstances, federal courts have the power to fashion "federal common law," *Northwest Airlines*, 451 U.S. at 95, 101 S.Ct. 1571, the Supreme Court has cautioned that "federal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers." *Id.* The legislative, not the judicial branch, is vested with lawmaking powers. *Id.* "Thus, once Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by federal courts is greatly diminished. Thereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law." *Id.* at 95 n. 34, 101 S.Ct. 1571.

The limited circumstances in which federal courts have the power to fashion federal common law are "few and restricted," as the Supreme Court pointed out in *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981):

There is, of course, "no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Nevertheless, the Court has recognized the need and authority in some limited areas to formulate what has come to be known as "federal common law." *See United States v. Standard Oil Co.*, 332 U.S. 301, 308, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). These instances are "few and restricted," *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), and fall into essentially two categories: those in which a federal rule of decision is "necessary to protect uniquely federal interests," *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), and those in which Congress has given the courts the power to develop substantive law, *Wheeldin v. Wheeler, supra*, at 652, 83 S.Ct. 1441.

In sum, the unmistakable thrust of Supreme Court precedent is that Congress' selection (and non-selection) of remedies in comprehensive remedial federal statutes, especially anti-discrimination statutes, is not a proper subject with which federal or state courts ought to tinker. *See infra.*

### B

Faithful to this mandate, every federal court to have examined the teachings of *Northwest Airlines* and its progeny (including *Texas Industries*, which was decided the same term as *Northwest Airlines* ) in the context of the FHA and the ADA has concluded that no claim to indemnity (or contribution) exists in connection with liabilities arising thereunder. *United*

*States v. Quality Built Const., Inc.*, 309 F.Supp.2d 767 (E.D.N.C.2003), for example, applied the reasoning of *Northwest Airlines* in a case in which the government filed an action against a developer, a builder and an architect for failing to design and build FHA-compliant complexes. *Id.* at 771 The government and the architect resolved the suit by entering into a consent order. *Id.* The builder filed a cross-claim against the architect for indemnification and contribution. *Id.* at 778. The builder also asserted state law claims for breach of contract and breach of the standard of care. *Id.* The architect moved for summary judgment, contending (1) there is no express or implied right to indemnity or contribution under the FHA, (2) there is no federal common law right to indemnification or contribution, and (3) the state law claims for breach of contract and breach of the standard of care, as *de facto* claims for indemnification and contribution, failed as a matter of law. *Id.*

The court conducted an evaluation of the cross-claim pursuant to the principles laid down in *Northwest Airlines, Id.* at 778–79. The court granted summary judgment to the architect on the claims for indemnification and contribution, as well as on the state law claims "[t]o the extent that Defendants seek indemnification," *Id.* at 779 (*citing Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989), and *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F.Supp.2d 661, 665 (D.Md.1998)), concluding that federal law afforded no claim to relief. The court declined to exercise supplemental jurisdiction over the remaining state law claims and they were dismissed without prejudice. *Id.*

*United States v. Gambone Brothers Dev. Co.*, 2008 WL 4410093 (E.D.Pa., Sept. 25, 2008), a case in which "the relevant facts [were] indistinguishable from [those in *Quality Built Const.*]," *id.* at *4 (altera-tions added), adopted and elaborated the reasoning in Quality Built Const. and reached the same result. *Accord United States v. Shanrie Co., Inc.*, 2009 WL 455136 (S.D.Ill., Feb. 23, 2009); *see also Bowers v. Nat'l Collegiate Athletic Assoc.*, 346 F.3d 402 (3rd Cir.2003) (no contribution claim under Title II of the ADA); *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Co.*, 2007 WL 633951, *6 n. 8, 2007 U.S. Dist. LEXIS 13560, *20 n. 8 (S.D.N.Y., Feb. 26, 2007) ("There is no express right to indemnity under the ADA, and the fact that the ADA has a comprehensive remedial scheme and that owners of non-compliant properties are not members of the class that the statute was intended to protect argue against reading any implied right of indemnification into the statute.").

C

Archstone plainly recognizes that federal law affords it no remedy under the circumstances of this case; it makes no argument to the contrary. Rather, as I understand its contentions, it argues that it is entitled to indemnity under *state law.* Archstone's theories can be distilled to two propositions. First, because Niles Bolton had, not simply a statutory duty owed to Plaintiffs, but separate and distinct contractual and professional duties owed to Archstone to ensure its designs complied with the FHA and the ADA, then in the face of a proven breach of those duties, Archstone should have a remedy under state law for (negligent) breach of contract. Second, because most, if not all, of the separate contracts between Archstone and Niles Bolton expressly provide for indemnification for damages arising out of Niles Bolton's failure to perform its agreements, indemnity is therefore available. These contentions are unavailing.

To be sure, Archstone is correct in its assertion that Niles Bolton had an independent obligation to design FHA- and ADA-compliant multi-unit housing. Archstone devotes more than 20 pages in its memorandum in support of the motion for partial summary judgment explaining that Niles Bolton (1) was required to comply with the FHA and ADA, and (2) (allegedly) failed to comply with the requirements of those statutes. As to the former assertion, it is true that Niles Bolton, like Archstone, had a non-delegable duty to design compliant dwellings. Furthermore, as to the latter assertion, Niles Bolton's failure to fulfill its independent obligation under the federal statutes opens itself up to liability. Manifestly, however, Niles Bolton is, or would be, liable only to Plaintiffs on first-party claims under the FHA and the ADA, claims Plaintiffs properly asserted. *See Baltimore Neighborhoods, Inc.*, 3 F.Supp.2d at 665 ("In essence, any entity who contributes to a violation of the FHAA would be liable. By this, the Court does not suggest that all participants are jointly and severally liable for the wrongful actions of others regardless of their participation in the wrongdoing, but rather, that those who are wrongful participants are subject to liability for violating the FHAA"). Most assuredly, Niles Bolton is not and would not be liable to Archstone on a derivative indemnification claim based on the FHA or the ADA.

As a matter of law, Archstone's state law claims for breach of contract and professional negligence are wholly derivative of Archstone's primary liability and are therefore what federal law regards as *de facto* claims for indemnification. Accordingly, those state law claims are barred because any recovery by Archstone would frustrate the achievement of Congress' purposes in the FHA and the ADA. To paraphrase the Fourth Circuit: "[A] state action for indemnification would frustrate the basic enforcement of federal [anti-discrimination] law. Plaintiff's [state law statutory] claim for indemnification is therefore preempted and should be dismissed with prejudice. We leave it to the state courts to classify plaintiff's pendent common law actions. If they are *de facto* claims for indemnification, they too are preempted." *Baker, Watts & Co.*, 876 F.2d at 1108 (alterations added); *see Quality Built Const.*, 309 F.Supp.2d at 779 ("To the extent that Defendants seek indemnification on the basis of these state actions, the claims are not allowed").

In *Baker, Watts & Co.*, on which Archstone heavily relies, the Fourth Circuit did not preclude state law remedies for *contribution* based on a Maryland statute that afforded relief to injured investors bringing first-party claims largely on the same basis as federal securities laws, although the federal claims had been finally adjudicated and complete relief awarded thereunder. *See Baker, Watts & Co.*, 876 F.2d at 1106. The Court reasoned that the plaintiff in that case, which had paid damages in settlement of the first-party claims, may seek contribution based on the state statute (or, perhaps, state common law) unless its claims are preempted by federal law. *Id.* "State law is preempted only when Congress acts to 'occupy the field,' or when the state claims at issue actually conflict with federal law." *Id.* at 1107. As the state securities statute permissibly co-existed with the federal statute, no conflict between the two precluded a claim for contribution based on the state statute, *although indemnification was foreclosed. Id.*

Here, Archstone's sole claim is for indemnification, even those labeled as breach of contract and professional malpractice, and indemnification is antithetical to Congress' purpose in enacting the FHA and the ADA. However labeled, the indemnification claim is preempted by federal law,

every bit as much as such a claim is preempted in respect to the federal securities laws under review in *Baker, Watts & Co.* Archstone claims that it "is not seeking, through its implied indemnity claims, to 'shift its entire responsibility for federal violations to Niles Bolton.'" *See* Archstone's Reply Mem. at 29. But by its very definition, that is exactly what indemnity means.

Archstone points to its contracts with Niles Bolton as a basis for indemnification. These contracts contain express indemnity provisions for losses and damages arising out of Niles Bolton's performance of, or failure to perform, its duties and obligations under the contract. But I must reject this formalism. The Plaintiffs alleged first-party FHA and ADA claims and Archstone's derivative claim for indemnity must first be evaluated under those statutes if the Congressional purposes are to be fully achieved. As the caselaw cited above well shows, both statutes are comprehensive. To illustrate, among the purposes of the ADA are "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities [and] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(a)(1)—(a)(2). These goals would be undermined if parties could simply "contract around" their responsibilities under the statute. *Cf. Access 4 All, Inc. v. Atlantic Hotel Condominiums Ass'n, Inc.*, 2005 WL 5643878, *13 (S.D.Fla., Nov. 23, 2005) ("[T]he Court cannot approve an arrangement where a developer of a hotel can essentially contract around ADA compliance").

The same imperative of Congressional purpose applies to attempts to "contract around" the "non-delegable" duties imposed by the FHA. The *Gambone* court succinctly summarized why Congress' comprehensive plan to root out disability discrimination in housing in the FHA, as amended, would be seriously undermined if those with primary liability under the FHA could shift the burdens and costs of compliance to others:

> [The court] agree[s] with the holding of *Quality Built* that a defendant that is itself liable under the FHA for handicap discrimination is "clearly not among the class which the statute is intended to protect, but rather [is] the part[y] whose conduct the statute was intended to regulate." *Quality Built*, 309 F.Supp.2d at 778. In passing the statute, Congress created the same type of "comprehensive legislative scheme including an integrated system of procedures for enforcement" that was at issue in *Texas Indus.* and *Northwest* Airlines. Consequently, "the presumption that a remedy was deliberately omitted from a statute is strongest." *Texas Indus.*, 451 U.S. at 645 [101 S.Ct. 2061] (quoting *Northwest Airlines*, 451 U.S. at 97 [101 S.Ct. 1571]). *Congress failed to provide a contribution and indemnity remedy to permit one defendant from asserting joint and several liability against co-defendants. This failure raises the presumption that Congress deliberately intended that each co-defendant have a non-indemnifiable, non-delegable duty to comply with the FHA and to compensate others for its own conduct.*

*Gambone Brothers Dev. Co.*, 2008 WL 4410093, *8 (first two alterations added; emphasis added). Thus, Archstone's express indemnity claim, based on its contract with Niles Bolton, is barred by federal law, every bit as much as its implied indemnity claim is barred.

Notably, the Fourth Circuit has made clear that it "reject[s][the] assertion that the federal policy against indemnification extends only to intentional wrongdoing."

*Baker, Watts & Co.,* 876 F.2d at 1108 (alterations added). The robustness of that "federal policy" is such that under the circumstances here, indemnification is forbidden irrespective of the source of the cross-plaintiff's claimed entitlement to it. *Id.*

### V.

For the reasons set forth, Archstone's motion to amend shall be denied as untimely and prejudicial to Niles Bolton. Furthermore, the conclusion is inescapable that Archstone's cross-claim for indemnity is barred by federal law. Accordingly, Niles Bolton's motion for summary judgment shall be granted and Archstone's cross-claim dismissed with prejudice. An Order follows.