Temmessia THURMOND, Plaintiff,

v.

**DRIVE AUTOMOTIVE INDUSTRIES OF AMERICA, INC. doing business as Magna Drive Automotive, Defendant/Third Party Plaintiff,**

v.

**Employ Bridge of Dallas, Inc. doing business as Resource MFG, and Staffing Solutions Southeast, Inc. doing business as Resource MFG, Third Party Defendant.**

**Civil Action No. 6:12–2758–TMC–KFM.**

United States District Court,
D. South Carolina,
Greenville Division.

Sept. 25, 2013.

Brian P. Murphy, Brian Murphy Law Firm, Greenville, SC, for Plaintiff.

Stephanie E. Lewis, Wendy L. Furhang, Jackson Lewis, Greenville, SC, for Defendant/Third Party Plaintiff.

Elizabeth D. Irby, R. Warren Hall, Jr., Hall Arbery and Gilligan, Atlanta, GA, Mark W. Bakker, Sarah Sloan Batson, Wyche Law Office, Greenville, SC, for Third Party Defendant.

## ORDER

TIMOTHY M. CAIN, District Judge.

In her complaint, the plaintiff, Temmessia Thurmond ("Thurmond"), alleges that the defendant, Drive Automotive Industries of America, Inc. ("Drive"), violated Title VII of the Civil Rights Act of 1964 by creating a hostile work environment and then retaliating against her when she initiated proceedings under Title VII and internal complaint procedures. (Complaint, ECF No. 1.) In turn, pursuant to certain contracts between the two parties, Drive has brought an action for contribution and indemnification against third party defendant, Employ Bridge of Dallas, Inc., and Staffing Solutions Southeast, Inc., d/b/a Resource Mfg. ("Resource") for liability to Thurmond. (Third Party Complaint, ECF No. 22.) Resource has moved to dismiss the third party complaint and that motion has been fully briefed by both parties. (ECF Nos. 32, 34, 39.)

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 73.02(B)(2)(g), D.S.C., all pre-trial matters have been referred to a magistrate judge. This case is now before the court on the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant Resource's motion to dismiss. (ECF No. 42.) The magistrate judge's recommendation has no presumptive weight and this court retains the responsibility to make a final determination. *See Mathews v. Weber,* 423 U.S. 261, 270–71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a de novo determination of those portions of the Report to which a party specifically objects, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Drive timely objected, asserting that the Report is "incorrect as a matter of law and is premature." (Objections, ECF No. 43.) Resource has responded to Drive's objections (ECF No. 45) and this matter is now ripe for review.

## I. Factual Background

Thurmond and her alleged harasser were both employed at Drive through Resource, a staffing agency. Resource and Drive had two contracts containing indemnity clauses: the Agreement and Purchase Order. Under both, Resource and Drive agreed to indemnify each other for each company's own violations of federal law. In addition, the Agreement establishes that Resource is the employer of each of its employees and retains certain responsibilities with regard to management, including decisions about discipline and termination. Drive alleges that, under these agreements, Resource is responsible for all costs of defense, including attorneys' fees, and damages incurred by Drive as a result of this lawsuit. Resource contends that the contract does not contemplate contribution and that indemnification would be

against public policy in this case and preempted by Title VII.

## II. Legal Standard

Under the federal rules, each pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim should be dismissed when the complaint fails to allege facts upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). However, "the pleading standard ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, the rules require more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* at 678, 129 S.Ct. 1937.

In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). And, for a claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

## III. Analysis

Under this standard, the court must dismiss the third party complaint. This action is not about any wrongdoing on the part of Resource. Thurmond brought her complaint against Drive, and only Drive.[1] No matter who employed the alleged harasser or was contractually responsible for discipline and termination, Thurmond claims that Drive condoned a hostile work environment and that Drive retaliated against her. If these allegations are false, then Drive will not be liable to Thurmond. If the allegations are not false, then they are based solely on Drive's alleged actions and/or failures, not Resource's. Drive cannot be held liable for Resource's actions under Title VII. Thus, even if every allegation in the third party complaint is true, neither contribution nor indemnification is applicable in this case and Rule 12(b)(6) dismissal is appropriate.

In its objections, Drive contends that the magistrate judge did not consider cases cited in support of the indemnity and contribution provisions. The court has faith that the magistrate judge properly considered all relevant authority, but will address Drive's objection. The court has reviewed every case Drive cites in its objections and briefing on Resource's motion to dismiss and finds that all of them are distinguishable on the same central point—in every case the plaintiff sued both parties to the contract at issue. *See Gibbs–Alfano v. Burton*, 281 F.3d 12, 15 (2d Cir.2002) (plaintiff originally brought suit against both the boat club and the

---

1. With respect to Resource, Thurmond's complaint alleges that Resource and Drive had a contractual relationship, Resource acted as Drive's agent for handling employee complaints, and that Thurmond complained about the harassment to both Resource and Drive. Thurmond does not, however, name Resource as a defendant, claim that Resource did not properly respond to her complaint, or even mention Resource in either of her two causes of action. The third party complaint does not add any information that would make Resource, rather than Drive, liable to Thurmond for her claims against Drive.

county); *Varnell, Struck & Assocs., Inc. v. Lowe's Co.,* Case No. 07–104, 2008 WL 1820830 at *9–11, 2008 U.S. Dist. LEXIS 108144 at *9, 24–27 (W.D.N.C. Mar. 27, 2008) (plaintiffs originally sued VSA for its own wrongdoing and then added Lowe's as a complicit co-employer); *Chao v. Indus. Corrosion,* Case No. 06–2762, 2007 WL 781760 at *6 n. 21, 2007 U.S. Dist. LEXIS 17380 at *21 n. 21 (S.D.Tex. Mar. 12, 2007) (This is an order on a motion to dismiss for lack of personal jurisdiction and the only mention of indemnification is in a very brief footnote. The court admits it did not look further into the facts of this case because it will not be persuaded by a footnote in an unpublished opinion about an irrelevant issue on a different federal statute from a district court far outside of this circuit.); *Locke v. Karass,* 425 F.Supp.2d 137 (D.Me.2006) (plaintiffs brought action against both parties to the contract—the state and MSEA); *Daniels v. Bd. of Trs. of the Herington Mun. Hosp.,* 841 F.Supp. 363, 364 (D.Kan.1993) (EMS workers filed suit against both the hospital and the county and claims for indemnification were brought as cross-claims).

In addition, the court agrees with the magistrate judge and finds *EEOC v. Blockbuster,* No. RWT 07cv2612, 2010 WL 290952 (D.Md. Jan. 14, 2010), instructive and persuasive. The facts in *Blockbuster* are similar to those in this case, the contract language at issue is almost identical, and the decision is by a district court within the Fourth Circuit applying Fourth Circuit law as much as possible to an issue of first impression. The magistrate judge's consideration of *Blockbuster* was certainly not "misplaced," as Drive suggests, but was necessary to his analysis of this case.

## IV. Conclusion

For the foregoing reasons and after a thorough review of the record, the court adopts the Report and incorporates it herein. Resource's motion to dismiss the third party complaint (ECF No. 32) is, therefore, granted.

**IT IS SO ORDERED.**

### REPORT OF MAGISTRATE JUDGE

KEVIN F. McDONALD, United States Magistrate Judge.

This matter is before the court on the third party defendants' motion to dismiss the third party complaint (doc. 32). In her complaint, the plaintiff alleges claims for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Temmessia Thurmond filed a complaint against Drive Automotive Industries, Inc. ("Drive") in the Court of Common Pleas, County of Greenville, South Carolina, on August 21, 2012. Drive removed the case to this court on September 24, 2012. The complaint asserts that the plaintiff suffered sexual harassment and retaliation while she was employed with Drive (doc. 1–1, comp.¶¶ 1, 13, 17). The plaintiff's complaint against Drive asserts two counts under Title VII. Count I asserts a claim against Drive for hostile work environment, alleging that Drive "intentionally discriminated against Plaintiff on the basis of her sex" (*id.* ¶ 12), and "created, tolerated, and condoned conduct that was severe or pervasive towards Plaintiff on account of her sex" (*id.* ¶ 13). In Count II, the plaintiff asserts that

Drive "retaliated against Plaintiff in response to her participating in proceedings under Title VII as well as under the Defendant's own internal process" (*id.* ¶ 17). The plaintiff filed an EEOC charge of discrimination against Drive and claims that she ultimately resigned her employment due to the abusive work environment she suffered (*id.* ¶¶ 7, 15). The plaintiff alleges that Drive has a contractual relationship with EmployBridge of Dallas, Inc. ("EmployBridge") and Staffing Solutions Southeast, Inc. ("Staffing Solutions") d/b/a Resource MFG "as to Plaintiff's employment with [Drive]" and that they acted as Drive's agents "with respect to the handling of complaints of employees" (*id.* ¶ 2). The plaintiff further alleges that she complained about harassment through EmployBridge and Staffing Solutions (*id.* ¶ 5).

Drive filed a third party complaint against EmployBridge and Staffing Solutions (collectively "Resource" or "the third party defendants") on January 17, 2013. Resource operates a staffing agency that placed certain employees with Drive to provide services in support of Drive's manufacturing business (doc. 22, 3rd party comp. ¶ 4). The plaintiff was assigned by Staffing Solutions to provide services at Drive (*id.* ¶ 9).

In the third party complaint, Drive contends that it operated with Resource pursuant to an Agreement and a Purchase Order (*id.* ¶ 5). The Agreement states in pertinent part:

> Resource ... acknowledges that it is the employer of the Temporary Workers.... As the employer of the Temporary Workers, Resource ... shall be responsible for all duties relating to hiring, discipline, reassignment and termination. Resource ... shall indemnify and save Drive ... harmless from any costs, demands, complaints or liability whatsoever arising ... with respect to

any claim by a Temporary Worker against Drive ... for termination pay, notice of termination, severance pay, vacation pay, or employment related benefits claims of any kind, where the Temporary Worker claims to have been an employee of Drive....

(Doc. 22–1, 3rd party comp., ex. A ¶ 12).

The Agreement further states:

> Resource ... guarantees and warrants that its employment of Temporary Workers shall be in strict compliance with all applicable federal, state, provincial and local laws. For Temporary Workers assigned to Drive ... this shall include without limitation: ... the Civil Rights Act ... as well as any other applicable or equivalent state, federal or local laws, regulating employment ... wrongful discharge or workplace discrimination or retaliation. Resource ... agrees to indemnify and save Drive ... harmless from any action, claim, costs, complaint, demand, expenses, fines, losses, regulatory proceedings, or liability whatsoever arising (the "Claims") with respect to any failure on the part of Resource ... to comply with such legal requirements.

(*Id.* ¶ 13(a)). The Agreement goes on to provide:

> In the performance of this Agreement, Drive ... agrees to comply with all applicable federal, state, provincial and local laws ... which prohibit discrimination and/or harassment in the workplace, and will indemnify and save Resource ... harmless with respect to any Claims which are shown to result solely and directly from Drive's ... material breach of such laws.

(*Id.* ¶ 13(c)).

The Purchase Order, through the Terms and Conditions incorporated therein, states that Resource agrees to indemnify

Drive for any "acts, omissions or negligence of [Resource] . . . in connection with [Resource's] performance of its obligations under" the Purchase Order (doc. 22–3, 3rd party comp., Ex. C ¶ 14(c)). The Terms and Conditions further state that Resource agrees to comply with all federal laws and agrees to indemnify Drive for any claims "arising from or as a result of [Resource's] failure to comply" with all laws (*id.* ¶ 21).

Drive asserts two theories for its claims against Resource in the third party complaint: contribution and indemnity. In Count I, Drive asserts that Resource is "obligated to reimburse and is liable to Drive for all or any liability . . . assessed [against Drive] by way of contribution" (doc. 22, 3rd party comp. ¶ 15). In Count II, Drive asserts that pursuant to the "indemnity provisions in the Agreement and Purchase Order Terms and Conditions, Resource is liable to Drive for all costs of defense, including attorneys' fees and damages incurred by Drive in connection with the present lawsuit, and for all alleged damages by Plaintiff, including wages, attorneys' fees, and costs" (*id.* ¶ 19). Drive alleges in the third party complaint that the plaintiff's complaint "is premised upon alleged sexual misconduct by another Temporary Worker of Resource placed at Drive (*id.* ¶ 11). Drive further alleges that Resource at all times remained the sole and exclusive employer of the Temporary Workers it placed with Drive, and Resource made all personnel decisions with respect to the plaintiff, including the decision to terminate her employment (*id.* ¶¶ 4, 12).

### *APPLICABLE LAW AND ANALYSIS*

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted. Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Robinson v. American Honda Motor Co., Inc.,* 551 F.3d 218, 222 (4th Cir.2009) (quoting *Twombly,* 550 U.S. at 555, 569, 127 S.Ct. 1955). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.,* 947 F.2d 1169, 1171 (4th Cir.1991) (citing *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).

### *Contribution*

██ Resource argues in the instant motion that Drive's contribution claim should be dismissed because there is no express or implied right to contribution under Title VII and there is no common law right to contribution in a Title VII action. In *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), the United States Supreme Court held that there is no express or implied right of contribution under Title VII. *Id.* at 91–94, 101 S.Ct. 1571. The Court also held that there can be no federal common law right to contribution regarding Title VII violations, as the remedies set forth by Congress in Title VII are the exclusive remedies available under the statute, and

federal courts are without authority to craft additional, supplemental remedies—even if the third party might bear partial responsibility for the statutory violations. *Id.* at 95–99, 101 S.Ct. 1571.

■ Drive argues in response that it "is not asserting a claim for contribution based upon any implied rights—Drive ... is asserting a claim for contribution based in express contract" (doc. 34, Drive resp. at p. 6). However, "[t]he doctrine of contribution does not rest upon contract but upon general principles of equity and natural justice; and the right arises when one has been compelled to pay more than his share of a common obligation which several persons are bound to discharge." *American Emp. Ins. Co. v. Maryland Cas. Co.*, 218 F.2d 335, 338 (4th Cir.1954). Drive offers no authority to the contrary (*see* doc. 34, Drive resp.). Furthermore, Drive's third party complaint does not allege the existence of a contractual contribution term (*see* doc. 22, 3rd party comp. ¶¶ 14–15). In its argument in opposition to the motion to dismiss, Drive cites provisions in the Agreement and Purchase Order "containing warranties, guarantees, and indemnification provisions, in favor of both Drive ... and Resource" (doc. 34, Drive resp. at p. 6) (emphasis omitted), but fails to cite to any provision regarding contribution. As argued by Resource, this is for good reason, as the Agreement and Purchase Order reference indemnification several times, as set forth above, but do not contain any reference to contribution (*see generally* docs. 22–1, 22–3).

Drive argues that "the other cases cited by Resource in support of dismissal of the contribution claim are similarly based upon any implied rights under federal statutory or common law and do not involve a contractual provision for contribution" (doc. 34, Drive resp. at p. 7). As the Agreement and Purchase Order at issue here also "do

not involve a contractual provision for contribution," the cases cited by Resource are perfectly applicable. In a Title VII case also involving an employer's attempt to assert a third party complaint against its staffing company, the court held that the third party claim for contribution failed as a matter of law. *EEOC v. Blockbuster Inc.*, No. RWT 07cv2612, 2010 WL 290952, at *2 (D.Md. Jan. 14, 2010). Like Drive, the third party plaintiff in *Blockbuster* sought to assert a claim for contribution in a Title VII case based on indemnity language in the underlying contract. The court recognized that "indemnification and contribution are not the same. Indemnification shifts the entire loss from one wrongdoer to another while contribution distributes losses among wrongdoers by requiring each to pay his proportionate share." *Id.* The court found that the staffing services agreement "contains provisions for indemnification, not contribution." *Id.* at *2. Thus, the court "refuse[d] to read any right to contribution under this section or any other section of the Services Agreement" and found that the "claim for contribution is without merit because the Services Agreement contemplates indemnification only...." *Id.* at *2, *4.

As there is no express or implied right to contribution under Title VII and no common law right to contribution in a Title VII action, and as the contract between Drive and Resource contemplates indemnification only, Resource's motion to dismiss Count I of the third party complaint should be granted.

### Indemnification

■ Resource next argues that Drive's claim for contractual indemnification is preempted by Title VII and federal public policy, noting that the Fourth Circuit "has repeatedly rejected attempts by parties to invoke state law to seek indemnity for

violations of comprehensive federal remedial statutes that do not expressly provide a right to indemnification, holding that such state law actions are preempted" (doc. 32–1, Resource m. to dismiss at pp. 7–8) (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir.1992) (holding employer's state law claims for indemnity for Fair Labor Standards Act violations were preempted); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir.1989) (holding state law action for indemnification for violations of federal securities laws were preempted); *Equal Rights Center v. Archstone Smith Trust*, 603 F.Supp.2d 814, 824–25 (D.Md.2009) (holding that state law crossclaims seeking indemnity based on contracts containing express indemnity provisions were barred by the Fair Housing Act and the Americans with Disabilities Act)).

Drive argues in response that it is not trying "to shift the entire liability for its 'wrongdoing' to another party," and thus the cases cited by Resource are inapposite (doc. 34, Drive resp. at p. 9). However, as stated by the district court in *Archstone Smith Trust* when presented with the same argument, "that is exactly what indemnity means." 603 F.Supp.2d at 825.[1] Instead, Drive contends that since the plaintiff has alleged wrongdoing on the part of both Drive and Resource and is attempting to hold Drive solely responsible for Resource's alleged wrongdoing through agency, the claim for indemnification is appropriate as the public policy concerns present in the cases cited by Resource are not present here (*id.* at pp. 10–11). Nonetheless, as argued by Resource, the third party complaint seeks to shift Drive's entire liability to Resource. For instance, the third party complaint alleges, "Re-

source is liable to Drive for all costs of defense, including attorneys' fees and damages incurred by Drive in connection with the present lawsuit, and for all alleged damages by Plaintiff, including wages, attorneys' fees, and costs" (doc. 22, 3rd party comp. ¶ 19). The third party complaint further states, "Drive demands judgment against Resource for all costs of defense ... incurred by Drive in connection with the present lawsuit, and for all alleged damages by Plaintiff ...." (*id.* at p. 4).

In *EEOC v. Blockbuster*, discussed above with regard to the contribution claim, the EEOC brought suit against an employer alleging unlawful employment practices in violation of Title VII. 2010 WL 290952, at *1. Like Drive, the employer/defendant (Blockbuster) filed a third party complaint against its staffing company, which had provided temporary workers. Blockbuster claimed that its contract with the staffing company included an indemnity clause, and thus it asserted a third party claim for contractual indemnity against the staffing company. *Id.* at *1–2. Just like Drive, Blockbuster claimed that "if it is found to be liable in whole or in part to the Plaintiff EEOC, then pursuant to the contractual relationship ..., [the staffing company] is liable for indemnification to Blockbuster for any liability on its part to the EEOC." *Id.* at *1. The court granted the staffing company's motion for judgment on the pleadings on the indemnification claim because the contractual indemnity provision was void as against public policy and preempted by Title VII. *Id.* at *2. Blockbuster filed a motion for reconsideration, arguing, like Drive in this case, that it sought indemnification "for the subcontractor's misconduct, as opposed to any alleged misconduct of Blockbuster." *Id.*

---

1. "Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrong-

doer to pay his proportionate-or pro rata-share of the adverse judgment." *Baker, Watts & Co.*, 876 F.2d at 1103.

The court noted that the plaintiff "brought this action against Blockbuster only" and did not sue the staffing company. The court reasoned that "[i]f Blockbuster is held liable, it can only be because Blockbuster subjected the Charging Parties to, or permitted the Charging Parties to be subjected to, unwelcome and offensive harassment and retaliation. Because Blockbuster can be held liable only for its own violations of Title VII, . . . contribution is inapplicable and Blockbuster cannot seek to distribute its losses." *Id.* at *3. Acknowledging that the "issue of whether Title VII bars a party's contractual claim for indemnification is a question of first impression in the Fourth Circuit," the court found as follows:

> In light of these decisions disfavoring indemnification claims for violations of the federal Securities Act of 1933, the FHA, and the ADA, the Court concludes that Blockbuster's claims for indemnification for violations of Title VII are similarly barred. The Supreme Court has held that "[t]he language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The primary goal of Title VII to eradicate discriminatory conduct would be thwarted if Blockbuster were permitted to contract around its obligations and shift its entire responsibility for complying with Title VII. *Cf. Archstone,* 603 F.Supp.2d at 825. Blockbuster therefore cannot seek contractual indemnification from [the staffing company] or any other entity.

2010 WL 290952, at *4. The *Blockbuster* case is directly on point, and the under-signed finds the court's reasoning persuasive. Based upon the foregoing, Count II of the third party complaint should be dismissed as it is preempted by Title VII.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the third party defendants' motion to dismiss (doc. 32) should be granted.

IT IS SO RECOMMENDED.

June 25, 2013, Greenville, South Carolina.