**INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, et al.,
Plaintiffs,**

v.

**CITY OF LOS ANGELES,
CALIFORNIA, et al.,
Defendants.**

Case No. CV 12–0551 FMO (PJWx).

United States District Court,
C.D. California.

Sept. 19, 2013.

---

Adam R. Pulver, D. Scott Chang, Jamie L. Crook, Michael G. Allen, Relman Dane and Colfax PLLC, Washington, DC, Autumn M. Elliott, Maria Michelle Uzeta,

Panchalam Seshan Srividya, Paula D. Pearlman, Disability Rights California, Los Angeles, CA, Dara L. Schur, Protection and Advocacy, Oakland Legal Office, Oakland, CA, David Grant Geffen, David Geffen Law Firm, Santa Monica, CA, for Plaintiffs.

Mark Andrew Byrne, Jennifer L. Derwin, Byrne and Nixon LLP, Melissa T. Daugherty, Juliet A. Antoun, Lewis, Brisbois, Bisgaard and Smith, LLP, Roberto Lara, Lara & Ibarra LLP, Derrick S. Lowe, R. Jeffrey Neer, Phillip A. Baker, Baker Keener and Nahra LLP, John R. Benson, Law Office of John R. Benson, Dimitrios Peter Biller, Paficia Palisades, Leo D. Plotkin, Levy Small and Lallas, Los Angeles, CA, Theresa L. Kitay, Theresa L. Kitay Attorney at Law, Marina del Rey, CA, Megan Kathleen Garibaldi, Mark Jason Austin, Rutan and Tucker LLP, Costa Mesa, CA, William Jeffrey Goines, Greenberg Traurig LLP, East Palo Alto, CA, Christopher P. Warne, Law Offices of Christopher Warne, Pacific Palasades, CA, Scott Parrish Moore, Anthony Domenic Todero, Baird Holm LLP, Omaha, NE, Barry Clifford Snyder, Snyder Law LLP, Santa Barbara, CA, for Defendants.

## ORDER Re: CROSS–DEFENDANTS' MOTION TO DISMISS

FERNANDO M. OLGUIN, District Judge.

The court has reviewed and considered all the briefing filed with respect to the Joint Motion of Rule 19 Owner Defendants to Dismiss Crossclaims of City and CRA/LA ("Motion"), and concludes that

oral argument is not necessary to resolve the Motion. *See* Fed.R.Civ.P. 78; Local Rule 7–15; *Willis v. Pac. Mar. Ass'n,* 244 F.3d 675, 684 n. 2 (9th Cir.2001).

## INTRODUCTION

The Independent Living Center of Southern California, Fair Housing Council of San Fernando Valley, and Communities Actively Living Independent and Free (collectively, "plaintiffs") filed this action on January 13, 2012, pursuant to Section 504 of the Rehabilitation Act ("Section 504"), Title II of the Americans with Disabilities Act ("Title II" or the "ADA"), the Fair Housing Act ("FHA") and California Government Code § 11135 ("Section 11135"). (*See* Plaintiffs' Complaint for Injunctive, Declaratory, and Monetary Relief). Plaintiffs filed a Second Amended Complaint for Injunctive, Declaratory, and Monetary Relief ("SAC") on August 20, 2012, alleging that defendants CRA/LA Designated Local Authority, a public entity and successor agency to the Community Redevelopment Agency of the City of Los Angeles ("CRA/LA"), and the City of Los Angeles ("City") (collectively, the "government defendants" or "cross-claimants")[1] have engaged in a "pattern or practice" of discrimination against people with disabilities in violation of federal and state anti-discrimination laws.[2] (SAC at ¶ 2).

Plaintiffs also name as defendants 61 owners of multifamily residential properties in the City of Los Angeles (collectively, "owner defendants"), which received federal funds from or through the government defendants. (*See* SAC at ¶¶ 3 & 57–116). Plaintiffs do not allege any affirma-

---

1. Plaintiffs also named as a defendant the Oversight Board for the CRA/LA, but all claims against the Oversight Board were dismissed pursuant to the Court's Order of November 29, 2012.

2. On November 29, 2012, pursuant to the City's and CRA/LA's motions to dismiss, the court upheld plaintiffs' claims pursuant to Section 504, the ADA, and Section 11135, but dismissed plaintiffs' claims under the FHA in their entirety. (*See* Court's Order of November 29, 2012).

tive claims against any of the owner defendants, but bring them into this action pursuant to Federal Rule of Civil Procedure 19(b) as necessary parties to enforce any injunctive and/or other relief that may be granted by the court if plaintiffs prevail against the government defendants.[3] (*See* SAC at ¶ 3).

On December 14, 2012, the City filed a Crossclaim For Contribution, Indemnity, and Declaratory Relief against all defendants and, on December 20, 2012 filed an Amended Crossclaim ("City's Am. Crossclaim"). On January 4, 2013, the CRA/LA filed a nearly identical crossclaim against the owner defendants.[4] (*Compare, generally*, Defendant/Cross–Defendant CRA/LA, A Designated Local Authority, Successor to Community Redeployment Agency of the City of Los Angeles' Cross-claim for Contribution Indemnity and Declaratory Relief ("CRA/LA's Crossclaim"), *with* City's Am. Crossclaim). The crossclaimants allege rights to express, implied, and contractual indemnification or contribution from the owner defendants, to the extent that they may be liable to plaintiffs. (*See* City's Am. Crossclaim at ¶¶ 66–70; CRA/LA's Crossclaim at ¶¶ 54–59).

On February 4, 2013, 58 of the 61 owner defendants filed the instant Motion to dismiss the crossclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] The owner defendants[6] contend the crossclaims must be dismissed because "no ... right to indemnification or contribution exists pursuant to any of the statutory violations alleged by the Plaintiffs against the City or the CRA/LA." (Motion at 4). On February 25, 2013, plaintiffs filed a Non–Opposition to Rule 19 Owner Defendants' Motion to Dismiss Crossclaims of City and CRA/LA ("Non–Opposition"). "On February 28, 2013, the City filed an Opposition to Joint Motion of Rule 19 Owner Defendants to Dismiss Crossclaims of City and CRA/LA and Request to Strike Plaintiff[s'] Non–Opposition" ("City's Opp."). On February 28, 2013, the CRA/LA filed an Opposition to Rule 19 Owner Defendants Motion to Dismiss Crossclaims of City and CRA/LA ("CRA/LA's Opp."). The owner defendants filed a reply brief on March 7, 2013 ("Reply").

### *FACTUAL BACKGROUND*[7]

Plaintiffs are non-profit, community-based organizations that provide services

---

**3.** " '[A] person may be joined as a party [under Rule 19(b)] for the sole purpose of making it possible to accord complete relief between those who are already parties, even though no present party asserts a grievance against such person.' " *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 781 (9th Cir.2005), *cert. denied*, 546 U.S. 1150, 126 S.Ct. 1164, 163 L.Ed.2d 1128 (2006) (brackets in original) (quoting *Beverly Hills Fed. Sav. and Loan Ass'n v. Webb*, 406 F.2d 1275, 1279–80 (9th Cir.1969)).

**4.** Because the City's and CRA/LA's crossclaims against the owner defendants do not materially differ from one another, either factually or legally, the court will, unless otherwise noted, examine the crossclaims together.

**5.** On February 12, 2013, two additional owner defendants—Hoover Seniors, L.P. and Ver-

mont Seniors, L.P.—filed a joinder to the Motion. (*See* Joinder of Crossdefendants Hoover Seniors, L.P. and Vermont Seniors, L.P. In Motion of Rule 19 Owner Defendants to Dismiss Crossclaims of City and CRA/LA Cross Claims" ("Joinder")). The Joinder "adopt[s] and incorporate[s] the entirety of the Cross-Defendants' motion to dismiss, including the memorandum in support and all supporting documentation filed with the Court." *See* Joinder at 2.

**6.** Of the owner defendants, only 901 South Broadway Street Limited does not join or otherwise bring its own motion to dismiss.

**7.** Unless otherwise noted, the allegations as stated in this section are based on the plaintiffs' SAC and the government defendants' crossclaims.

to people with disabilities in the City of Los Angeles and adjoining areas. (See SAC at ¶¶ 9–30). Plaintiffs assert that their missions have been hindered, and the effectiveness of their programs and services undermined, as a result of the government defendants' alleged failure to comply with disability anti-discrimination laws. (See id. at ¶¶ 202–27).

Defendant CRA/LA is a public agency established as successor to the former Community Redevelopment Agency of the City of Los Angeles ("the Agency"), which conducted redevelopment and revitalization activities using public and private funds in designated areas of the City of Los Angeles.[8] (See SAC at ¶¶ 36–48). Plaintiffs allege that the City and CRA/LA have received financial assistance from the federal and state governments within the meaning of the Rehabilitation Act and California Government Code § 11135. (See id. at ¶¶ 33–34, 49–51). The City of Los Angeles is sued in its own capacity and in its capacity as a successor to the Agency. (See id. at ¶¶ 35, 53).

## I. PLAINTIFFS' CLAIMS AGAINST THE CITY AND CRA/LA.

Plaintiffs' claims against the government defendants are as follows: (1) claims one and two allege that the government defendants "discriminated and continue[ ] to discriminate on the basis of disability in violation of Section 504 of the Rehabilitation Act by acting or failing to act in a manner that" results in unlawful discrimination against or "unlawfully limits people with disabilities from enjoying housing or the opportunity to obtain … housing," (see SAC at ¶¶ 233–38); (2) claims three and four allege that the government defendants "discriminated and continue[ ] to discriminate on the basis of disability in violation of Title II of the ADA by acting or failing to act in a manner that, among other things[,]" limits or denies people with disabilities the ability to "enjoy[ ] housing or the opportunity to obtain … housing by engaging in the [complained of] policies, practices, acts, and omissions[,]" (see id. at ¶¶ 239–44); and (3) claim six alleges that the same acts and omissions giving rise to the federal claims violate Cal. Gov.Code § 11135, which imposes non-discrimination obligations on entities receiving financial assistance from the state of California. (See id. at ¶¶ 250–51).

Plaintiffs allege that the government defendants have "knowingly allocated millions of dollars in federal, state and other funds to finance housing throughout Los Angeles without ensuring that their programs as a whole and the housing they developed, funded, and significantly assisted is accessible and made meaningfully available to people with disabilities." (SAC at ¶ 2). According to plaintiffs, the government defendants "have failed, and continue to fail, to maintain policies, practices, or procedures to ensure" that accessible housing units are made available and are meaningfully accessible to people with

---

**8.** Plaintiffs originally named the Agency as a defendant. However, as of February 1, 2012, the Agency was dissolved as part of a restructuring of redevelopment agencies in California. (See SAC at ¶¶ 43–46); see also California Redev. Assoc. v. Matosantos, 53 Cal.4th 231, 135 Cal.Rptr.3d 683, 267 P.3d 580 (2011) (holding that legislation dissolving community redevelopment agencies is constitutional and establishing a dissolution date of February 1, 2012, for all agencies.). Accord-ingly, on or about February 1, 2012, the CRA/LA Designated Local Authority was established and became the successor to the Agency. (See SAC at ¶¶ 47–48). The CRA/LA assumed statutorily specified functions, assets, and liabilities of the Agency. (See id. at ¶ 52). With leave of the court, plaintiffs amended their complaint to substitute the Agency with the CRA/LA as a defendant in its place. (See Court's Order of November 29, 2012 at 1 n. 1).

disabilities. (*Id.* at ¶¶ 170–72). They contend that, "[a]t all relevant times, the Government Defendants failed to monitor compliance with the Rehabilitation Act accessibility requirements[,]" (*id.* at ¶ 174), and "failed to exercise oversight over developers and owners of housing in the [Program] in regards to their obligations to comply and their ongoing compliance with disability access provisions of federal law." (*Id.* at ¶ 181). "The Government Defendants have failed, and continue to fail, to require that projects within the [Program] comply with federal accessibility requirements, which has the effect of excluding people with disabilities from such developments." (*Id.* at ¶ 179).

Plaintiffs further allege that the government defendants "failed to ensure compliance with these requirements in housing where the Government Defendants were providing federal funding to the developer and/or owner for the project." (SAC at ¶ 183). This includes funding granted to the owners of the "61 multifamily projects [of the owner defendants], comprising approximately 4,140 units, for which the [government defendants] provided [federal] funds to support new construction or substantial alteration." (*Id.* at ¶ 184). Finally, plaintiffs allege that "[n]one of the 61 federally-funded multifamily projects contains units accessible to people with mobility and/or auditory or visual impairments in sufficient numbers, sizes and locations to provide people with disabilities meaningful access to this program, service, or activity in violation of Section 504 of the Rehabilitation Act, Title II of the ADA, ... and [California] Government Code § 11135. (*Id.* at ¶ 185).

## II. GOVERNMENT DEFENDANTS' CROSSCLAIMS AGAINST THE OWNER DEFENDANTS.

The government defendants allege that each of the housing property owners received funds from the CRA/LA for the development of a housing project and entered into contractual agreements with the government defendants in which they agreed to abide by the Rehabilitation Act's requirements. (*See* City's Am. Crossclaim at ¶¶ 5–64; CRA/LA's Crossclaim at ¶ 56). Incorporating by reference the allegations contained in plaintiffs' SAC, the government defendants allege that they are "entitled to contribution toward or indemnity from [c]rossdefendants, and from each of them for any liability and damages that may be found to exist as to [p]laintiff[s] in this action as a result of the allegations in" the SAC. (City's Am. Crossclaim at ¶ 66; CRA/LA's Crossclaim at ¶ 54). They allege that the owner defendants "are each wholly responsible or responsible in part for the injuries and damages alleged by Plaintiff[s] in the [Second] Amended Complaint." (City's Crossclaim at ¶ 67 CRA/LA's Crossclaim at ¶ 55). Accordingly, because they claim a right to recovery from the owner defendants only to the extent the government defendants are found liable to plaintiffs, the government defendants seek indemnification or contribution for any liability found under the Rehabilitation Act, the ADA, or Cal. Gov't Code § 11135. (*See* City's Am. Crossclaim at ¶¶ 66–67; CRA/LA's Crossclaim at ¶¶ 55, 56).

The government defendants further allege that the owner defendants "have executed contracts or other written agreements with the CITY [and CRA/LA] or [with] respect to which the CITY [and CRA/LA] [are] beneficiar[ies,]" and that the agreements provide that the owner defendants will "indemnify and hold [crossclaimants] harmless" from the injuries and damages sought by plaintiffs. (City's Am. Crossclaim at ¶ 67; CRA/LA's Crossclaim at ¶ 55). On those grounds, the government defendants also seek contribution or

indemnity "under general equitable principles and/or the law of contractual indemnity[.]" (City's Am. Crossclaim at ¶ 69; CRA/LA's Crossclaim at ¶ 58). Finally, the government defendants seek, among other things, that if the court finds the government defendants liable pursuant to the SAC, it also "enter an order against Crossdefendant(s) that the policies, practices, acts, and/or omissions by the Crossdefendant(s) ... are the cause of Plaintiffs' injuries." (City's Am. Crossclaim at 26, ¶ 6; CRA/LA's Crossclaim at ¶ 59).

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should be granted if the claimant fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly (Twombly)*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal (Iqbal)*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir.2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949; *Cook*, 637 F.3d at 1004; *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir.2010). Although the government defendants must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965; *Iqbal*, 129 S.Ct. at 1949; *see also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir.2004), *cert. denied*, 544 U.S. 974, 125 S.Ct. 1828, 161 L.Ed.2d 724 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*per curiam*) (citations and internal quotation marks omitted); *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964.

▮ In considering whether to dismiss a cross-complaint, the court must accept the allegations of the cross-complaint as true. *Erickson*, 551 U.S. at 93–94, 127 S.Ct. at 2200; *Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir.2005). *See Brown v. Koch Maschinenbau GMBH*, 2010 WL 4365668, *1 (D.Conn.2010) (internal quotation marks omitted) ("On motions to dismiss a cross-claim pursuant to Rule 12(b)(6), a court takes the allegations of the cross-claim as true and construes them in a manner favorable to the claimant."). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A [cross-complaint] may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228–29 (9th Cir.1984).

## DISCUSSION

### I. STATUTORY AND REGULATORY FRAMEWORK.

The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., was designed to "maximize employment, economic self-sufficiency, independence, and inclusion and integration into society" of people with disabilities. 29 U.S.C. § 701(b)(1). Section 504 of the Rehabilitation Act protects "qualified individual[s] with a disability" from being "subjected to discrimination under any program or activity receiving Federal financial assistance" "solely by reason of her or his disability[.]" 29 U.S.C. § 794.

Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., "governs access to public services." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1002 (9th Cir.2013). Under the ADA, "qualified individuals with a disability" cannot be "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity[,]" "by reason of such disability." 42 U.S.C. § 12132.

"There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (listing cases). "Title II of the ADA and § 504 of the [Rehabilitation Act] both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the [Rehabilitation Act] proscribes discrimination in all federally-funded programs." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.2002), *cert.*

*denied*, 537 U.S. 1105, 123 S.Ct. 871, 154 L.Ed.2d 775 (2003); *see also Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.), *cert. denied*, 522 U.S. 971, 118 S.Ct. 423, 139 L.Ed.2d 324 (1997) ("Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act[.]").

Congress provided that the "the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance ... under" the Rehabilitation Act. 29 U.S.C. § 794a(a)(2).[9] "The remedies, procedures, and rights" under the ADA mirror those under the Rehabilitation Act. 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.").

The implementing regulations of Section 504 and ADA Title II are also similar. For example, the regulations implementing Section 504 provide that "[a] recipient, in providing any housing, ... or service in a program or activity that receives Federal financial assistance from the Department [of Housing & Urban Development ("HUD")] may not ... solely on the basis of handicap:" (1) "[a]id or perpetuate discrimination against a qualified individual with handicaps by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any housing ... to beneficiaries in the recipients federally assisted program or activity"; or (2) "[o]th-

---

**9.** "In 1978, Congress amended the Rehabilitation Act to specify the means of enforcing its ban on discrimination. In particular, § 505(a)(2), 29 U.S.C. §§ 794a, made available the remedies, procedure, and rights set

forth in Title VI of the Civil Rights Acts of 1964' to victims of discrimination in violation of § 504 of the Act." *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 626, 104 S.Ct. 1248, 1250, 79 L.Ed.2d 568 (1984).

erwise limit a qualified individual with handicaps in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by other qualified individuals receiving the housing[.]" 24 C.F.R. § 8.4(b)(1). Similarly, the regulations implementing Title II of the ADA [10] provide that "[a] public entity, in providing any aid ... or service, may not ... on the basis of disability ... [a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid ... or service to beneficiaries of the public entity's program;" or "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1).

In short, the analysis of a claim for indemnification or contribution under Section 504 of the Rehabilitation Act is equally applicable to a claim under Title II of the ADA. Similarly, because Section 11135 is California's equivalent of Section 504, and all of plaintiffs' claims rely on the same set of facts, the court's examination of whether indemnification and contribution are cognizable claims under the federal statutes applies equally to the Section 11135 claim. *See Greater Los Angeles Council on Deafness, Inc. v. Zolin,* 812 F.2d 1103, 1113–14 (9th Cir.1987) (finding a private right of action under § 11135 based on "the similarity of language between section 11135 and section 504"); *Communities Actively Living Indep. & Free v. City of L.A.,* 2011 WL 4595993, *17 (C.D.Cal.2011) (Section 11135 "is identical to the Rehabilitation Act except that the entity must receive State financial assistance rather than Federal financial assistance") (internal quotation marks omitted).

## II. CROSSDEFENDANTS CANNOT BE LIABLE PURSUANT TO PLAINTIFFS' CLAIMS AGAINST THE GOVERNMENT DEFENDANTS.

The crossclaims "[i]ncorporat[e] by reference the allegations contained in plaintiffs' SAC," and assert that crossdefendants are liable for "contribution ... or indemnity ... for any liability and damages that may be found [against the government defendants] in this action as a result of the allegations in" the SAC. (*See* City's Am. Crossclaim at ¶¶ 66–70); CRA/LA's Crossclaim at ¶¶ 54–59 (alleging rights to indemnification or contribution from the owner defendants "to the extent" that the government defendants they may be liable to plaintiffs). Because indemnity or contribution are sought based only on the allegations in the SAC as stated against the government defendants, the crossclaims are not based on allegations of wrongdoing by the Rule 19 Defendants independent of the actions or liability of the City or CRA/LA.

As the court previously explained, "[t]he main focus of this lawsuit is the legality of the overall housing program[.]" (Court's Order of November 29, 2013, at 6). "Plaintiffs did not file this case because a particular building violated provisions under the various statutes[.]" *Id.* Rather, plaintiffs filed this case because the "Government Defendants failed, and continue to fail, to take steps to ensure that the Redevelopment Housing Program ["Program"] is accessible to people with disabilities or that any accessible units that exist are made available to people with disabili-

---

**10.** The ADA specifically provides that "regulations under ... this section shall be consistent with this chapter and with the coordination regulations ... applicable to recipients of Federal financial assistance under section 794 of Title 29." 42 U.S.C. § 12134(b).

ties." (SAC at ¶ 168). Plaintiffs' allegations are based on the government defendants' failure to: (1) "maintain policies, practices, or procedures to ensure that" accessible housing is meaningfully accessible to people with disabilities, (*see id.* at ¶¶ 170–72); (2) "monitor compliance with ... accessibility requirements[,]" (*id.* at ¶ 174); and (3) "exercise oversight over developers and owners of housing" who receive federal funds. (*Id.* at ¶ 181).

█ Public entities have the affirmative duty to "make reasonable modifications in policies, practices, or procedures when ... necessary to avoid discrimination on the basis of disability[ ]" *Zukle,* 166 F.3d at 1046 (citing 28 C.F.R. § 35.130(b)(7)). Further, "a public entity may not, directly or through contractual arrangements, utilize criteria or methods of administration" "[t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability," or "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the public entity's program with respect to individuals with disabilities[.]" 28 C.F.R. § 35.130(b)(3)(i), (ii). These duties and obligations are imposed only on the government defendants, not the private owner defendants. Indeed, the actions and omissions complained of—such as administering, monitoring, and overseeing the expenditure of public funds in accessible housing throughout the City of Los Angeles (*see* SAC at ¶¶ 170–72, 174 & 181),—could not have been taken by the individual private property owners. The government defendants also fail to explain how the court could find the owner defendants liable in the manner plaintiffs seek to hold them liable under subject statutes. (*See, generally,* City's Opp. & CRA/LA's Opp.). While the owner defendants have independent duties under the federal statutes as recipients of federal funds, they cannot be liable for the claims as alleged

by plaintiffs, much less so for indemnity or contribution based on the same allegations. *Cf. Equal Rights Ctr. v. Archstone Smith Trust,* 603 F.Supp.2d 814, 824 (D.Md.2009) *aff'd. Equal Rights Ctr. v. Niles Bolton Associates,* 602 F.3d 597 (4th Cir.), *cert. denied,* — U.S. ——, 131 S.Ct. 504, 178 L.Ed.2d 370 (2010) ("To be sure, [defendant] is correct ... that [crossdefendant] had an independent obligation to ... comply with the ... ADA, [and] would be[ ] liable only to Plaintiffs on first-party claims under ... the ADA[.]"). Nevertheless, given the scope of this action, and because the parties focus their arguments on whether implied or state indemnity or contribution claims exist, the court will address those contentions.

### III. RIGHT TO CONTRIBUTION OR INDEMNITY UNDER THE ADA AND THE REHABILITATION ACT.

The owner defendants contend that "[n]o express or implied right to indemnity or contribution exists under" either Rehabilitation Act or the ADA. (Motion at 6). In addition, they argue that state-based indemnity or contribution claims are preempted by the federal statutes. (*See* Motion at 9–13). The government defendants respond by arguing that state law indemnity and contribution claims are not preempted because they do not conflict with, but rather support, the purposes of Section 504 and the ADA. (*See* City's Opp. at 7–8; CRA/LA's Opp. at 7–11). The City also argues that a federal right to indemnity or contribution exists because the Rehabilitation Act's regulations "clearly contemplate the availability of indemnity" claims for governmental entities. (*See* City's Opp. at 9–10).

### A. *Standard to Determine A Federal Implied Right of Action.*

█ "The right to contribution and indemnification are no different in principle

from other implied rights of action." *Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas),* 934 F.2d 209, 212 (9th Cir.1991). To determine whether a federal statute provides an implied right to indemnity or contribution, the court must examine whether: (1) Congress intended such a right to exist, either explicitly or implicitly; or (2) the cause of action is recognized by "federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct." *Northwest Airlines v. Transp. Workers Union of Am., AFL–CIO,* 451 U.S. 77, 90, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981). Because the government defendants do not argue that there is an explicit right under either the ADA or Section 504, *(see, generally,* City's Opp.), the court must determine whether (1) implicit rights to contribution or indemnity exist, or (2) whether the remedies are available under federal common law.

■ "In determining whether a federal statute ... implicitly created [a private] right [of action], our task is one of statutory construction. The ultimate question ... is whether Congress intended to create the private remedy—for example, a right to contribution—that the plaintiff seeks to invoke." *Northwest,* 451 U.S. at 91, 101 S.Ct. at 1580; *see Logan v. U.S. Bank Nat. Ass'n,* 722 F.3d 1163, 1170 (9th Cir.2013) ("The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.' ") (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979)). "Factors relevant to this inquiry are the language of the statute itself, its legislative history, [and] the underlying purpose and structure of the statutory scheme[.]" *Northwest,* 451 U.S. at 91, 101 S.Ct. at 1580. Another significant factor is whether the statute was "adopted for the benefit

of" the party invoking the implied right of action, or if "[o]n the contrary, [it] is a member of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class[.]" *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981) (internal quotation marks, citation, and emphasis omitted); *see Mortgages,* 934 F.2d at 213 (same).

■ Where there is no implied right of action, the right may nevertheless be created by federal common law in a "few and restricted" instances "in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law[.]" *Texas Indus., Inc.,* 451 U.S. at 640, 101 S.Ct. at 2067 (internal quotation marks and citations omitted). "[E]xcept in limited circumstances such as cases involving the United States or resolution of interstate controversies, the courts' power to fashion federal common law is strictly limited." *Bowers v. Nat'l Collegiate Athletic Ass'n,* 346 F.3d 402, 422 (3rd Cir.2003).

A somewhat different standard applies where the remedial provision for which indemnity or contribution is sought was created by the courts in the first instance. *See Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 292, 113 S.Ct. 2085, 2088, 124 L.Ed.2d 194 (1993) ("The parties against whom contribution is sought are, by definition, persons or entities alleged to have violated existing securities laws ... under a remedial scheme established by the federal courts."). In this situation, "a federal court has the limited power to define the contours of that [remedial] structure" and create the implied right to enforce the remedy. *Id.* at 293, 113 S.Ct. at 2089 (internal quotation marks and citation omitted). The

court must not "assess the relative merits" of the proposed implied right, but rather "effect[uate] Congress' objectives in enacting the [underlying] laws[.]" *Id.* at 294–95, 113 S.Ct. at 2090.

### B. Whether There Is An Implied Right Of Action For Indemnity Or Contribution Under Section 504 Or Title II Of The ADA.

■ As noted earlier, *see supra* at 1232–34, Section 504 and Title II of the ADA both have similar purposes in eliminating discrimination against disabled individuals by public entities and/or by recipients of federal financial assistance. Section 504 protects "qualified individuals with a disability" from being "excluded from the participation in, ... denied the benefits of, or ... subjected to discrimination under any program or activity [11] receiving Federal financial assistance" "solely by reason of her or his disability[.]" 29 U.S.C. § 794. Under Title II of the ADA, "qualified individuals with a disability" cannot be "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity[,]" "by reason of such disability." 42 U.S.C. § 12132.

In *Northwest,* the Supreme Court addressed whether an employer found liable under the Equal Pay Act of 1963 and Title VII could state a claim for contribution from the employee's union, which allegedly was partially responsible for the violations. *See* 451 U.S. at 79–80, 101 S.Ct. at 1574–75. In examining the statutory language to determine Congressional intent, the Supreme Court explained that even though the language itself did not "create a right

to contribution[,]" the "omission, although significant, is not dispositive if ... the language of the statutes indicates that they were enacted for the special benefit of a class of which petitioner is a member." *Id.* at 91–92, 101 S.Ct. at 1580–81. The Court then noted that "it cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted. To the contrary, both statutes are expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees." *Id.* at 92, 101 S.Ct. at 1581.

Here, as in *Northwest,* it cannot be disputed that the ADA and Rehabilitation Act were created for the special benefit of people with disabilities. *See* 42 U.S.C. § 12101(b)(1) & (2)(ADA); 29 U.S.C. § 794(a) (Rehabilitation Act); *see also Mark H. v. Lemahieu,* 513 F.3d 922, 930 (9th Cir.2008) (quoting *Greater L.A. Council on Deafness, Inc. v. Zolin,* 812 F.2d 1103, 1107 (9th Cir.1987)) ("Section 504 establishes an implied private right of action allowing *victims* of prohibited discrimination ... to seek 'the full panoply of remedies, including equitable relief and [compensatory] damages.'") (emphasis added). Municipal governments, as public entities using federal funds to provide public services, are the parties whose conduct the statutes intend to *regulate. See Northwest,* 451 U.S. at 91–92, 101 S.Ct. at 1581. Title II and Section 504 are "in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against [a Rule 19 defendant] with 'unclean hands.'" *Mortgages, Inc.,* 934 F.2d at 212–13 (holding that "Congress did not intend to create a right of action

---

**11.** A "[p]rogram or activity" is broadly defined to mean "all of the operations of ... a department, agency, ... or other instrumentality of ... a local government" or "the enti-

ty of ... [a] local government that distributes such [federal financial] assistance and each such department or agency[.]" 29 U.S.C. § 794(b)(1)(A) & (B).

for contribution or indemnification" because "the FCA does not speak to the right of contribution or indemnification[, and nothing] ... in the legislative history of the [statute] mentions contribution or indemnification"). Thus, nothing in Section 504 of the ADA can be read as providing for an implied right to indemnity or contribution in favor of the City. *See Bowers*, 346 F.3d at 433 ("[N]othing in the ADA counsels in favor of recognizing a right to contribution for violations of Title II"); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th Cir.1989) (ERISA "establishes remedies for the benefit of the *plan*. Therefore, this section cannot be read as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*.") (emphasis in original).

The comprehensiveness of the remedial schemes of Title II and Section 504 also forecloses remedies not contemplated by Congress. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir.2002) (party could not state a claim "under 42 U.S.C. § 1983, predicated upon ... violation of Title II ... and section 504 ... because that claim is barred by the comprehensive remedial scheme of those Acts"); *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir.2012) (The "comprehensiveness of the[ ] remedies suggested that Congress intended the Title II remedial scheme to be the exclusive means by which a party could vindicate ... Title II ADA rights, and that allowing the plaintiff to use the more general § 1983 remedial scheme instead would be contrary to Congress's intent."). "The comprehensive character of the remedial scheme[s] expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." *Northwest*, 451 U.S. at 93–94, 101 S.Ct. at 1582. Further, there is nothing in the legislative history of the ADA or Rehabilitation Act suggesting an intent to create an implied right to indemnification or contribution.

*See id.* at 94, 101 S.Ct. at 1582 ("[W]e conclude that the legislative histories of the Equal Pay Act and Title VII provide no support for petitioner's position ... [since] the legislative history of neither statute contains any reference, adverse or favorable, to contribution.").

Nor can the implied right to contribution or indemnity arise under federal common law. "[O]nce Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by federal courts is greatly diminished. Thereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law." *Northwest*, 451 U.S. at 95 n. 34, 101 S.Ct. at 1583 n. 34; *see Equal Rights Ctr.*, 603 F.Supp.2d at 822 ("In sum, the unmistakable thrust of Supreme Court precedent is that Congress' selection (and non-selection) of remedies in comprehensive remedial federal statutes, especially anti-discrimination statutes, is not a proper subject with which federal or state courts ought to tinker."). Here, there are no "uniquely federal interests" that warrant the creation of implied rights under federal common law. *See Texas Industries*, 451 U.S. at 639, 101 S.Ct. at 2067; *Mortgages*, 934 F.2d at 213 ("The right of recovery from another wrongdoer, however, does not implicate any such interests."). The court may not legislate by adding remedies not contemplated by Congress.

The crossclaims fail even under the "less exacting standard based on *Musick*, asking only whether the availability of a right to [indemnity or] contribution should be implied as a proper part of [a] liability apparatus created by the judiciary to enforce the statutes[,]" *Bowers*, 346 F.3d at 419, that is, where the courts created the claim for which contribution or indemnity is sought. *Id.* at 426. In *Bowers*, the Eleventh Circuit undertook a detailed examina-

tion of whether a right of contribution exists under Title II or Section 504. It explained that because Congress explicitly granted remedies available under Title VI when it enacted the Rehabilitation Act and Title II, the acts themselves "arguably contain explicit provisions creat[ing] a private right of action[,]" since, at that time, the courts already recognized a private right of action under Title VI.[12] *See id.; see also Cannon,* 441 U.S. at 694–96, 99 S.Ct. at 1956–57 (holding that section 901 of Title IX authorized an implied private right of action because Congress patterned it after the nearly identical language of Title VI, which had been construed by courts as creating a private right of action); *cf. Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 683–84 (9th Cir.2006) ("Faced with statutory silence on the burden issue, we presume that Congress is aware of the legal context in which it is legislating."). If so, then implied rights to indemnity and contribution can be recognized only under the standards set out by *Northwest* and *Texas Industries,* which, as discussed above, are foreclosed. *See Bowers,* 346 F.3d at 423–24 ("The federal interests in both *Texas Industries* and *Northwest Airlines* were defined by statutory provisions that were express in creating the substantive damages liability for which contribution was sought[,]" rather than "under a remedial scheme established by the federal courts.") (quoting *Musick,* 508 U.S. at 290–92, 113 S.Ct. at 2087–88). In any event, even if the remedies under Title II and Section 504 had originated in common law, a right to contribution would still not be warranted because the court is "being asked ... to formulate a right that

belongs not to a member of the class Congress sought to protect, but that instead benefits solely a violator of the duties Congress created for the protection of that class." *Bowers,* 346 F.3d at 430; *see Kim,* 871 F.2d at 1433 ("[A] right of contribution is particularly inappropriate where ... there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers.") (internal quotation marks omitted).

In short, the court concludes that no implied rights to indemnity or contribution exist under the Rehabilitation Act or Title II of the ADA. This conclusion is consistent with the decisions of several other courts. *See, e.g., Bowers,* 346 F.3d at 433 (holding that neither Title II nor Section 504 recognize implicit rights to contribution); *Mims v. Dallas Cnty.,* 2006 WL 398177, *3 (N.D.Tex.2006), findings and recommendation accepted by Mims v. Dallas Cnty.,* No. CV 04–2754(M), 2006 WL 398177 (N.D.Tex.2006) (rejecting county defendants' third-party claim for contribution in civil rights action brought by three former inmates alleging violations of Title II and Section 504, where "neither statute explicitly provides for such a right[,] [n]or has any federal court ever implied a right to contribution under the [statutes]"); *Equal Rights Ctr.,* 603 F.Supp.2d at 821–22 ("The clear weight of authority among lower courts applying the reasoning of *Northwest Airlines* compels the conclusion that there is no right to indemnification under the ... ADA."); *Access 4 All Inc. v. Trump Int'l Hotel & Tower Condo.,* 2007 WL 633951, *7 (S.D.N.Y.2007) (Rejecting third-party plaintiff's action seeking indemnification

---

**12.** Years before the enactment of the Rehabilitation Act, which incorporated the rights and remedies set forth in Title VI, the "the critical language in Title VI had already been construed as creating a private remedy." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 696, 99

S.Ct. 1946, 1957, 60 L.Ed.2d 560 (1979); *see* 29 U.S.C. § 794a(a)(2). It is therefore presumed that Congress incorporated the private remedy into the Rehabilitation Act. *Cannon,* 441 U.S. at 697, 99 S.Ct. at 1958.

for any judgment in the underlying ADA lawsuit because there is "no federal common-law right to indemnification under the ADA" and "th[e] Court should not engraft a judicial remedy of indemnification where on has been omitted by the legislature."); *U.S. v. Murphy Dev., LLC,* 2009 WL 3614829, *1 (M.D.Tenn.2009) [13] ("The federal courts that have considered the question . . . are in universal agreement that there is no express or implied right to indemnity or contribution under the FHA or ADA."); *Mathis v. United Homes, LLC,* 607 F.Supp.2d 411, 419–20 (E.D.N.Y. 2009) (holding there is no federal right to contribution and/or indemnity provided by the Fair Housing Act); *Sentell v. RPM Mgmt. Co., Inc.,* 2009 WL 2601367, *4 (E.D.Ark.2009) (same); *U.S. v. Quality Built Const. Inc.,* 309 F.Supp.2d 767, 778 (E.D.N.C.2003) (same).

### C. Whether The Regulations Or Section 504 Compliance Manuals Create An Implied Right To Indemnity Or Contribution.

■ The City asserts that one of the regulations implementing Section 504 contemplates a right to contribution or indemnity. (*See* City's Opp. at 9–10). Section 8.50(a) of Title 24 of the Code of Federal Regulations requires that "an applicant for Federal financial assistance for [an applicable] program or activity . . . shall submit an Assurance to HUD, or in the case of a subrecipient to a primary recipient, . . . that the program or activity will be operated in compliance" with Section 504. According to the City, "[t]he assurances would be meaningless if the City were unable to enforce [the assurances] by seeking contribution and/or indemnity from a

developer/owner that violates the terms of their agreement and violates Federal accessibility requirements." (City's Opp. at 10). The City's assertions are unpersuasive.

■ "In determining whether a particular regulation is enforceable through a statute's private right of action, [the courts] must look to the statute itself and determine whether it displays Congress's intent to create the private right purportedly contained in the regulation." *Lonberg v. City of Riverside,* 571 F.3d 846, 850 (9th Cir.2009). "Only those regulations effectuating the statute's clear prohibitions or requirements are enforceable through the statute's private right of action; regulations that do not encapsulate the statutory right and corresponding remedy are not privately enforceable." *Id.* at 851; *see Mark H. v. Lemahieu,* 513 F.3d 922, 939 (9th Cir.2008) ( [T]o be enforceable through the § 504 implied private right of action, regulations must be tightly enough linked to 504 that they "authoritatively construe" that statutory section, rather than impose new obligations.).

As discussed above, there is no such intent to create a private right of action in favor of the class of parties Section 504 regulates. Further, nothing in the legislative scheme allows the analytical leap the City proposes, *i.e.,* that because a subrecipient of federal funds must make an assurance that it will comply with its responsibilities under Section 504, the City has "not just a private right[,] but also a private remedy." *See Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 1519, 149 L.Ed.2d 517 (2001). The City did not submit any argument as to how the

---

**13.** "Due to the similarity of the ADA and the FHA's protections of individuals with disabilities in housing matters, courts often analyze the two statutes as one." *Caron Found. of Florida, Inc. v. City of Delray Beach,* 879

F.Supp.2d 1353, 1364 (S.D.Fla.2012); *see Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir.2003); *Montana Fair Hous., Inc. v. City of Bozeman,* 854 F.Supp.2d 832, 836 (D.Mont.2012).

court may properly construe the regulation as providing a right of action, much less an implied private remedy of indemnification and contribution. (*See, generally,* City's Opp.). "[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Sandoval,* 532 U.S. at 291, 121 S.Ct. at 1522.

The City also contends that provisions in three HUD compliance manuals referencing indemnification allow the City to seek indemnity against the owner defendants under the Rehabilitation Act.[14] (*See* City's Opp. at 10). (*Id.*). The three manuals are entitled: (1) Compliance in HOME Rental Projects: A Guide for Property Owners ("HOME Property Owner Guide")[15]; (2) Compliance in HOME Rental Projects: A Guide for [Participating Jurisdictions ("PJ")] ("HOME PJ Guide")[16]; and (3) Managing CDBG, A Guidebook for Grantees on Subrecipient Oversight ("CDBG Oversight Guide").[17] (*See* Declaration of Jennifer Derwin in Support of City's Opp. to Joint Motion of Rule 19 Owner Defendants to Dismiss Crossclaims of City and CRA/LA ("Derwin Deck"), Exhs. 2–4). According to the City, the manuals relate to sources of federal grants known as HOME and CDBG funds, which plaintiffs allege the City has received, and to agreements entered into between public recipients and subrecipients of those funds. (*See* City's Opp. at 10 (citing SAC ¶¶ at 147–48)).

The City cites to a "Checklist of Elements in a Written Agreement between a PJ and an Owner of Rental Housing[,]" contained in the HOME Property Owner Guide and the HOME PJ Guide. (*See* City's Opp. at 10; Derwin Decl., Exh. 2 at 230 & Exh. 3 at 236). The HOME guides include identical checklists listing the term "Indemnification" as one of 13 "general provisions," which are "recommended" in a written agreement between a PJ and subrecipient, such as the City and owner defendants. (*See* Derwin Deck, Exh. 2 at 226 & 230 & Exh. 3 at 232 & 236) (stating that only items "denoted with an asterisk" are required provisions, and listing the term "indemnification" without an asterisk). The City also relies on a "Sample Subrecipient Agreement" form included in

---

14. Although the City relies on HUD's manuals, it does not ask the court to take judicial notice of them. (*See, generally,* City's Opp.). The court will, however, *sua sponte,* take judicial notice of the manuals. *See* Fed.R.Evid. 201(b) & (c) (permitting courts to judicially notice "on its own" facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Protect Lake Pleasant, LLC v. McDonald,* 609 F.Supp.2d 895, 922 n. 13 (D.Ariz.2009) ("In the exercise of its discretion, ... as Fed.R.Evid. 201(c) allows, the court will take judicial notice of [the federal agency's] website" and its statements regarding an agency manual); *cf. Denius v. Dunlap,* 330 F.3d 919, 926–27 (7th Cir.2003) (holding that district court erred in refusing to take judicial notice of information on official website of a federal agency that maintained medical records on retired military personnel).

15. The HOME Property Owner Guide is available at: portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/affordablehousing/library/modelguides/2009/2009homerentalpo (last visited on September 17, 2013).

16. The HOME Property PJ Guide is available at: http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/affordablehousing/library/modelguides/2009/2009homerentalpj (last visited on September 17, 2013).

17. The CDBG Guide is available at: http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/community development/library/subrecipient (last visited on September 17, 2013).

the CDBG Oversight Guide, which provides that "[t]he Subrecipient shall hold harmless, defend and indemnify the Grantee from any and all claims, actions, suits, charges and judgments that arise out of the ... subject matter called for in this Agreement." (*See* Derwin Decl., Exh. 4 at 238 & 242).

■ "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *N. Cal. River Watch v. Wilcox,* 633 F.3d 766, 779 (9th Cir.2011) (internal quotation marks omitted). In *N. Cal. River Watch,* the Ninth Circuit rejected the federal government's reliance on an agency handbook regarding the Endangered Species Act, stating that the handbook had "no power to persuade" in its statutory interpretation because the handbook in question provided only "flexible guidelines[.]" 633 F.3d at 779–80. Here, the provisions relied on by the City do not consist of the enforcing department's interpretation of the statute or regulations. *Cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."). The three brief references to indemnification provisions in agreements between a participating jurisdiction and a grant subrecipient are mere recommendations. (*See* Derwin Deck, Exh. 2 at 226, 230 & Exh. 3 at 232, 236

(explaining that only items "denoted with an asterisk" are required, and listing the term "indemnification" without an asterisk), & Exh. 4 at 238 (indicating the agreement is only a sample)). Further, the City has not provided any authority that the subject provisions in the manuals purport to interpret a particular regulation or statutory provision, or that HUD has ever taken the position that the manuals are binding. (*See, generally,* City's Opp.); *see also N. Cal. River Watch,* 633 F.3d at 779 n. 13 (agency previously took the position that the handbook was not binding, and "in light of the conclusory use of the term in ... the [h]andbook, there appears to have been little thought given to the meaning of the term."). In short, the court is not persuaded that the three HUD manuals are sufficient to establish the existence of an implied right to indemnification under Section 504.

## IV. WHETHER STATE LAW CLAIMS FOR CONTRIBUTION AND INDEMNITY ARE PREEMPTED UNDER THE FEDERAL STATUTES.

The government defendants contend that they may nevertheless recover against the owner defendants based on state indemnity and contribution law because those "claims are not expressly preempted" by Section 504 or the ADA. (*See* CRA/LA's Opp. at 5; City's Opp. at 8). They argue that nothing "preclude[s] allocating ultimate responsibility through indemnification and contribution pursuant to state contract or common law." [18] (*See id.*). The owner defendants respond by invoking

---

**18.** "[T]he [statutes'] preemptive effect on state common-law remedies is a separate question from the availability of these remedies as an implied right of action under the [statutes] or under federal common law." *Miami Valley Fair Hous. Ctr., Inc. v. Steiner & Associates, Inc.,* 483 Fed.Appx. 67, 69, n. 3 (6th Cir.

2012); *see Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1256 (6th Cir. 1996) ("[T]he preemption defense to the state claims and the 'federal common law' claims are conceptually distinct, and resolution of one issue does not [necessarily] affect resolution of the other.").

the doctrine of conflict preemption and submit that the state claims are barred because they stand as an obstacle to the purposes and objectives of the federal statutes. (*See* Motion at 11–13; Reply at 3–8).

"Preemption can occur in one of three ways: express preemption by statute, occupation of the field, or conflict between state and federal regulation." *U.S. v. 4,432 Mastercases of Cigarettes, More Or Less,* 448 F.3d 1168, 1189 (9th Cir.2006) (quoting *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,* 410 F.3d 492, 495 (9th Cir.2005). *cert. denied,* 547 U.S. 1205, 126 S.Ct. 2887, 165 L.Ed.2d 916(2006)), Neither party suggests that the ADA or Rehabilitation Act expressly preempt state law contribution and indemnity laws, nor do they contend that field preemption applies. (*See, generally,* City's Opp. & CRA/LA's Opp.). Thus, conflict preemption is the only type of preemption at issue in this case.

■ "Conflict preemption occurs when ... state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Incalza v. Fendi N. Am., Inc.,* 479 F.3d 1005, 1009–10 (9th Cir.2007) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)). Every preemption analysis "must be guided by two cornerstones." *Wyeth v. Levine,* 555 U.S. 555, 565, 129 S.Ct. 1187, 1194, 173 L.Ed.2d 51 (2009). The first is that "the purpose of Congress is the ultimate touchstone." *Id.; see Chae v. SLM Corp.,* 593 F.3d 936, 944 (9th Cir. 2010) ("[I]t is our duty to consider carefully what Congress was trying to accomplish in the [statute] and whether these state law claims create an 'obstacle' to the congressional purposes."). "The second is that a presumption against preemption applies when 'Congress has legislated ... in

a field which the States have traditionally occupied.'" *U.S. v. Arizona,* 641 F.3d 339, 348 (9th Cir.2011) *aff'd in part, rev'd in part on other grounds,* — U.S. ——, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012) (quoting *Wyeth,* 555 U.S. at 565, 129 S.Ct. at 1194).

■ With respect to the first factor in the preemption analysis, it is clear that the objectives of Title II and Section 504 are to provide comprehensive, federal protections for people with disabilities against discrimination. Congress made explicit its purpose in creating a national remedial scheme in which the "Federal Government plays a central role in enforcing the [protections] on behalf of individuals with disabilities" and "to invoke the sweep of congressional authority ... in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(3) & (4). In doing so, Congress provided "remedies, procedures, and rights" for "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance[.]" 29 U.S.C. § 794a(a)(2).

As to the second factor, the presumption against preemption is inapplicable because the states have not traditionally occupied the field of anti-discrimination law. *See Fed'n of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1214 (9th Cir. 1996) ("Private causes of action against state actors who impair federal civil rights have not been traditionally relegated to state law."). "The Supreme Court has noted that 'since the Civil War, the Federal Government and the federal courts have been the 'primary and powerful reliances' in protecting citizens against such discrimination.'" *Id.* (quoting *Cannon,* 441 U.S. at 708, 99 S.Ct. at 1964). Indeed, the impetus for the Rehabilitation Act and the ADA was the federal government's recog-

nition of widespread discrimination against people with disabilities at the hands of state governments, and its desire to eradicate barriers encountered by people with disabilities in carrying out major life activities. As the Supreme Court has explained:

Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights. For example, as of 1979, most States ... categorically disqualified 'idiots' from voting, without regard to individual capacity. The majority of these laws remain on the books, and have been the subject of legal challenge as recently as 2001. Similarly, a number of States have prohibited and continue to prohibit persons with disabilities from engaging in activities such as marrying and serving as jurors. The historical experience that Title II reflects is also documented in this Court's cases, which have identified unconstitutional treatment of disabled persons by state agencies in a variety of settings, including unjustified commitment, the abuse and neglect of persons committed to state mental health hospitals, and irrational discrimination in zoning decisions[.]

*Tennessee v. Lane*, 541 U.S. 509, 524–25, 124 S.Ct. 1978, 1989, 158 L.Ed.2d 820 (2004). Accordingly, "Congressional enactment of the ADA represents its judgment that there should be a comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 967, 148 L.Ed.2d 866 (2001) (internal quotation marks omitted). Based on this authority, and the government defendants' failure to cite to any authority holding otherwise, (*see, generally,* City's

Opp. & CRA/LA's Opp.), the court will not apply a presumption against preemption.

A. *Whether The State Law Indemnity And Contribution Claims Are Preempted By Section 504 And Title II Of The ADA.*

The government defendants do not present any authority upholding state indemnity or contribution claims where Title II or Section 504 serve as the underlying statutes. (*See, generally,* City's Opp. & CRA/LA's Opp.). Instead, they defend their state crossclaims primarily on their contention that disallowing the right to indemnity and contribution will undermine the purposes of the federal statutes because violators—the owner defendants here—will not be held responsible for their wrongdoing. For example, the City asserts that "the Court should not allow the Owner Defendants to escape liability for any violations that occurred at their respective properties." (City's Opp. at 2); (*see also id.* at 8) ("The suggestion that Congress intended to allow the owner to accept federal funding to build a housing project and operate that project for its benefit, yet avoid liability for accessibility violations is an affront to the intent of Congress."). Similarly, the CRA/LA contends that "Congress could not have intended to allow those who participated in the design and construction decisions, such as Cross–Defendants, and allegedly caused the statutory violations of the ADA and the Rehabilitation Act to walk away from indemnification and contribution obligations and leave their share of the wrongdoing for a community-based agency to cover." (CRA/LA's Opp. at 9). According to the CRA/LA, the owner defendants' position would necessarily "emasculate the intended power of those statutes by insulating independent contractor developers from culpability for their own acts." (CRA/LA's Opp. at 3).

Contrary to the government defendants' assertions, disallowing the state contribution and indemnity claims will not immunize the owner defendants or diminish their potential liability under the ADA or the Rehabilitation Act. The owner defendants, as subrecipients of federal funds, remain "on the hook" based on their independent responsibilities under the subject statutes. *See Equal Rights Ctr.,* 603 F.Supp.2d at 824 (denying state law indemnity claim under the ADA and FHA and explaining that cross-defendant maintained independent obligations under the statutes and its failure to meet that obligation "open[ed] [it] up to liability[,]" although not to cross-claimant.); *U.S. v. Bryan Co.,* 2012 WL 2051861, *5 (S.D.Miss.2012) ("If [cross-defendant architect] drew up inaccessible building plans and the [crossclaimants] failed to correct them at some point before or during construction, both sides may have exposure under the FHA and ADA.").

The government defendants also raise policy arguments in support of their state law counterclaims. The CRA/LA argues that "allocating ultimate responsibility through indemnification and contribution pursuant to state contract or common law ... strengthens the goals of the ADA and Rehabilitation to achieve greater incentives for non-discrimination of the disabled." (CRA/LA's Opp. at 5). The City asserts that the state crossclaims are not preempted because they "further the congressional purpose of improving accessibility and eliminating discrimination by ensuring that the primary violators are held accountable for designing and constructing buildings that are not accessible." (City's Opp. at 8); (*see also* CRA/LA's Opp. at 10 ("No policy goal of the ADA or any disability law is served by letting those who committed the wrongful acts ... escape liability for their actions.")). The govern-

ment defendants' policy arguments are unpersuasive.

"In determining whether state law stands as an obstacle to the full implementation of a federal law, it is not enough to say **that the** ultimate goal of both federal and state law is the same." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 103, 112 S.Ct. 2374, 2385, 120 L.Ed.2d 73 (1992) (citing *Michigan Canners & Freezers Ass'n., Inc. v. Agric. Mktg. & Bargaining Bd.,* 467 U.S. 461, 477, 104 S.Ct. 2518, 2527, 81 L.Ed.2d 399 (1984) (state statute establishing association to represent agricultural producers pre-empted even though it and the federal Agricultural Fair Practices Act "share the goal of augmenting the producer's bargaining power")). In other words, the question is not whether the court believes it is good policy to allow state law indemnity claims to go forward because they may further the goals of Section 504 and the ADA. Rather, the question is whether the crossclaims "interfere[ ] with the methods by which the federal statute[s] [were] designed to reach [their] goal." *Gade,* 505 U.S. at 103, 112 S.Ct. at 2385 (internal quotation marks omitted). Whether a state claim fails under obstacle preemption "requires the court independently to consider national interests and their putative conflict with state interests ... [P]reemption under [an obstacle preemption] theory is more an exercise of policy choices by a court than strict statutory construction." *Equal Rights Ctr. v. Niles Bolton Associates,* 602 F.3d 597, 601 (4th Cir.2010) (alterations in original). "[T]he granting of [state law] indemnity in any situation represents a judicial choice of policy[,] and courts have long recognized that the doctrine is not available where it would operate against public policy." *W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.,* 8 Cal.4th 100, 109–10, 32 Cal.Rptr.2d 263, 876 P.2d

1062 (1994) (internal quotation marks and citation omitted).

In *Equal Rights Ctr.*, a case raising similar issues, the Fourth Circuit held that allowing a housing developer to shift its responsibility to another party through state indemnity counterclaims "are antithetical to Congress' purpose in enacting the FHA and ADA" because the statutes do not allow wrongdoers to offset their liability. *See* 603 F.Supp.2d at 824–25. Similarly, in *Bryan Co.*, the court rejected the contention that a state indemnity cause of action "would actually advance . . . the fundamental goals of the FHA," explaining that the availability of indemnification would disincentive parties from proactive compliance with the statute. 2012 WL 2051861, at *5. Rather, it explained that congressional objectives are best served when parties with duties under the antidiscrimination statutes remain independently responsible for compliance, and determined that the state claim was conflict preempted because it "would frustrate, disturb, interfere with, or seriously compromise the purposes of the FHA and ADA." *Id.* (internal quotation marks and citation omitted); *see also Access 4 All*, 2007 WL 633951, at *6 (Rejecting cross-complainant's action seeking indemnification for any judgment against it in an underlying ADA suit pursuant to either the common law of New York, or federal common law); *Murphy Dev.*, 2009 WL 3614829, at *2 ("[S]tate-law claims for express or implied indemnity and/or contribution will also be dismissed with prejudice . . . because allowing recovery under state law for indemnity and/or contribution would frustrate the achievement of Congress' purposes in adopting the FHA and the ADA.").

Congress chose to meet the goals of Section 504 and Title II by creating rights and remedies for victims of disability discrimination. Congress created a comprehensive remedial scheme allowing victims of disability discrimination to bring private causes of actions against public and private entities that use public funds in a discriminatory manner. In short, allowing public entities regulated by Section 504 and Title II to seek indemnification or contribution through state law to offset their liability would "interfere[ ] with the methods by which the federal statute[s] w[ere] designed to reach [their] goal." *Gade*, 505 U.S. at 103, 112 S.Ct. at 2385.

B. *Whether The Government Defendants' Contractual Indemnity Crossclaims Are Preempted By Section 504 And The ADA.*

■ According to the crossclaims, each of the owner defendants "entered into an agreement to receive funds from" the government defendants. (*See* City's Am. Crossclaim at ¶¶ 5–64; CRA/LA's Crossclaim at ¶¶ 5–42). "[T]he agreements . . . provide that the [owner defendants] would comply with all applicable federal . . . standards, [and] disabled and handicapped requirements" and, therefore, "[t]o the extent that Cross–Claimant is held responsible for non compliance with [the federal laws], Cross–Claimant is entitled to contribution and indemnity[.]" (CRA/LA's Crossclaim at ¶ 56); (*see* City's Am. Crossclaim at ¶ 67) ("Such contracts or agreements provide that Crossdefendants executing said documents are to indemnify and hold harmless the [government defendants] from the injuries and damages sought by the Plaintiffs herein."). The CRA/LA contends that "[n]othing in the ADA, the Rehabilitation Act or Section 11135 set aside contractual responsibilities to enforce the rules and regulations of their respective statutory schemes." (CRA/LA's Opp. at 3).

In *Equal Rights Ctr.*, the court addressed a similar contention as that made by the government defendants, *i.e.*, that a contractual indemnity claim was proper because the subject contracts "contain[ed] express indemnity provisions for losses and damages arising out of ... failure to perform ... duties and obligations under the contract." 603 F.Supp.2d at 825. After determining that the contractual indemnity claim was derivative of the first-party claims under the ADA and FHA, the court explained that the "claim for indemnity must first be evaluated under those statutes if the Congressional purposes are to be fully achieved." *Id.* Stating that "[t]he same imperative of Congressional purpose applies to attempts to 'contract around' the 'non-delegable' duties imposed by" the statutes, the court concluded that the statutes' "goals would be undermined" if a party were allowed to seek contractual indemnification. *Id.; see Walker v. Crigler,* 976 F.2d 900, 904 (4th Cir.1992) ("[T]he regulatory purposes of the FHA and ADA would be undermined by allowing a claim for [contractual] indemnity.").

As in *Equal Rights Center*, the government defendants' contractual indemnity claim, based on their contracts with the owner defendants, is barred every bit as much as their implied indemnity claim discussed above, indeed, the government defendants make no substantive distinction between the contractual indemnity claim and the non-contractual claims. (*See, generally,* City's Crossclaim & CRA/LA's crossclaim). Thus, the contractual indemnity claims meet the same fate as the state law indemnity and contribution claims discussed above. (*See supra* at 1242–46). In short, the court agrees with the owner defendants that "the contract claims of the City and the CRA/LA are nothing more than an unsupportable end run around the unavailability of indemnification or contri-

bution under these civil rights statutes" (Motion at 4).

## V. THE CROSSCLAIMS ARE DISMISSED WITHOUT LEAVE TO AMEND.

■ The government defendants request leave to amend their crossclaims in the event the owner defendants' Motion is granted. (*See* City's Opp. at 15; CRA/LA's Opp. at 15). Specifically, they seek to amend their crossclaims to "plead ... state law claim[s] for breach of contract based upon the contractual duties owed by the Owner Defendants." (*See id.*). While leave to amend should be freely given when justice so requires, *see Bowles v. Reade,* 198 F.3d 752, 757 (9th Cir.1999), leave to amend may be denied if the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000).

Here, any reiteration of a state breach of contract claim that depends on the City or CRA/LA's liability pursuant to plaintiffs' allegations will, in essence, be an indemnification or contribution claim. Any such amendment, even if new facts are alleged, will fail as a matter of law. *See Equal Rights Ctr.,* 603 F.Supp.2d at 821 (Claims for relief "clothed [in] ... the state law garb of breach of contract ... are ... derivative claims in the in the sense that they arise solely based on [the government defendants'] actual or potential first-party liability under, i.e., its violation of" Section 504 and Title II.); *Niles Bolton,* 602 F.3d at 602 (state claims for breach of contract ... are preempted when they are merely de facto claims for indemnification or contribution under civil rights statutes).

■ Further, to the extent the government defendants may have any colorable state law claims for breach of contact that

**1162**

are not derivative, but rather independent, of their own liability to plaintiffs, *see U.S. ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830–31 (9th Cir.1993) ("counter-claims for indemnification or contribution by definition . . . have the effect of offsetting liability," but "[c]ounterclaims for independent damages are distinguishable, however, because they are not dependant on [the counterclaimant's] liability."), the court is unwilling, under the circumstances of this case, to exercise supplemental jurisdiction over such claims. Supplemental jurisdiction is proper only where the federal and state claims "are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction if the state claim "substantially predominates" over the federal claim. Issues of "economy, convenience, fairness, and comity" may also support a decision to decline jurisdiction over a state law claim. *Executive Software v. United States District Court*, 24 F.3d 1545, 1556 (9th Cir. 1994), *overruled on other grounds by Ca. Dept. of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir.2008) (internal quotation and citation omitted).

As noted by the owner defendants, "if the City and the CRA/LA are permitted to amend their crosscomplaints to add state law breach of contract claims against the Rule 19 Defendants, an already unwieldy action will become unmanageable." (Reply at 9). The breach of contract claims "will result in the creation of 61 state law 'mini-actions' for which this Court will be asked to assume supplemental jurisdiction[,]" since they will be based on 61 individual agreements with their own set of underlying facts. (*See id.*). In addition, the breach of contract crossclaims will be too attenuated from the primary claims alleging violations of federal (and analogous state) disability anti-discrimination statutes. The risk is far too great that the 61 breach of contract crosscomplaints would "predominate over" the federal claims in plaintiffs' action. In short, the government defendants' request for leave to amend will be denied and the crossclaims will be dismissed with prejudice.

### *CONCLUSION*

Based on the foregoing, IT IS ORDERED THAT the Joint Motion of Rule 19 Owner Defendants to Dismiss Crossclaims of City and CRA/LA **(Document No. 242)** is **granted.** The City's and CRA/LA's crossclaims are dismissed with prejudice.